Katherine Adams **FRENCH**, Plaintiff in Error,

**v.**

**SOTHEBY & COMPANY**, a Partnership, Defendant in Error.

Nos. 42213, 42686, 42917.

Supreme Court of Oklahoma.

April 7, 1970.

Rehearing Denied June 23, 1970.

Earl Q. Gray, Ardmore, for plaintiff in error.

Fischl, Culp & McMillin, Ardmore, for defendant in error.

DAVISON, Justice.

The above numbered appeals are companion cases. They are separate appeals from a judgment and several orders entered by the trial court.

In No. 42213, Katherine Adams French (defendant below) appeals from a judgment rendered against her in favor of Sotheby & Co., (plaintiff below) for $24,886.27 and interest, when the trial court sustained plaintiff's motion for a summary judgment. Plaintiff Sotheby cross-appeals therein from an order granting defendant French additional time in which to appeal, after expiration of the time originally given for that purpose.

The appeal in No. 42686 is by the defendant French from a later order denying her petition for a new trial based on newly discovered evidence.

The appeal in No. 42917 is by the defendant French from a later order overruling her objections and confirming sheriff's sale of her real estate on execution issued on the money judgment.

The general proposition presented in No. 42213 is whether the trial court was justified in rendering a summary judgment. The particular issues are whether the plead-

ings and filings required a determination of a question of fact, and whether plaintiff had misconstrued its remedy by bringing an action for the balance of the price of merchandise instead of an action for damages.

Plaintiff is located in London, England. Defendant is a resident of Ardmore, Oklahoma, but was in Europe most of the time, where her children were in school.

Plaintiff's petition (filed July 19, 1965) and amendment thereto alleged that defendant was indebted to plaintiff on open account in the sum of $24,886.27 for merchandise purchased by defendant on March 22, 1965, and March 25, 1965. The attached statement of account stated Sotheby & Co. were Auctioneers of Works of Art in London, England, and showed that the merchandise consisted of eight ancient or antique guns bought (bid in) for 10,480 pounds, on which there had been credited on May 6, 1965, the amount of 1571 pounds, 2 shillings, and 3 pence, leaving a balance due of 8908 pounds, 17 shillings, and 9 pence. It was alleged that the value of the British pound at the time the debt was made was $2.7937. The defendant was personally served with summons in Ardmore, Carter County, Oklahoma.

Defendant, acting as her own attorney prepared and filed an answer alleging she had engaged a Mrs. Bowater of London, England, to buy guns at the plaintiff's auction (which Bowater did), but that the amount of the bill was so "amazing" that she could not raise the money to pay the bill; that she complied with what she thought were the applicable auction laws permitting her to pay 15% and then to have the articles auctioned again; that a written condition of the auction sale (quoted) provided that upon default by a buyer the defaulter would make good any loss arising from the re-sale, with charges and expenses "in respect to both" sales; and that plaintiff still had the merchandise and had returned her check for 15%, and since plaintiff had not-re-sold the merchandise, she did not know how she could reimburse any loss arising from the sale.

Later, in November, 1965, the defendant wrote the Judge of the trial court twice from Europe stating her children were in school there and asking for a postponement of the case until she could return in July, 1966. Therein defendant again stated plaintiff had the merchandise and that she had sent plaintiff a check for 15% which was returned.

In the meantime the trial court overruled plaintiff's demurrer to the answer and granted plaintiff permission to file a motion for summary judgment.

Defendant then engaged an attorney (other than her present attorney) who filed an answer for her, consisting of a general denial, a denial that she was indebted to plaintiff in the sum stated in the petition, a denial that she was indebted to plaintiff in any sum, and alleged that if she did purchase the goods that they were purchased upon conditions imposed by plaintiff whereby the goods would be resold if the conditions were not met, with the charges and expenses of both sales and any loss charged to defendant, and further alleged that she tendered to plaintiff a sum in excess of any expense of the sales and of any loss but that the tender was refused. Her answer alleged that plaintiff had kept possession of the merchandise and denied that the sum sued for was the proper measure of damages.

Plaintiff then filed a motion for summary judgment. Attached thereto in support of the motion was an affidavit of one of the partners of plaintiff identifying certain exhibits consisting of two checks and a number of letters given and written concerning the purchase of the guns at the auction held March 22 and 25, 1965. We construe these instruments and plaintiff's answers to defendant's interrogatories on their face to present the following circumstances: At some time prior to the auction sales the defendant delivered to Mrs. Bowater two signed checks drawn on her bank account in a bank in Wichita Falls, Texas. The checks were made payable to plaintiff and dated March 18, 1965, and

March 16, 1965, with amounts left blank. Mrs. Bowater bid in the guns and the March 18 check was filled in for 10,480 pounds. This check was returned because of insufficient funds. The March 16 check was then filled in for "$4290.00," and this check was returned at the request of defendant. On April 17, 1965, defendant wrote Mrs. Bowater from Germany stating in part, "I cannot fly back just now, so enclosed is check to pay them 15% commission and have them put the things up again * * *." On April 22, 1965, Mrs. Bowater forwarded both the letter and the check to plaintiff. Plaintiff, on May 6, 1965, supra, credited the account with 1571 pounds, 2 shillings, and 3 pence, leaving the balance for which plaintiff sued and was given judgment.

The exhibits to plaintiff's affidavit reflect that plaintiff wrote a number of letters to defendant requesting payment of 8908 pounds, beginning with a letter dated May 21, 1965, in which plaintiff stated " * * * at the time of writing, nothing has been received." Defendant answered with a letter to plaintiff dated June 3, 1965, stating she was unable to afford the guns, and that "I mailed a check for 15% of the gun bid and since this is the legitimate charges of refusal I can do no more."

In answer to defendant's interrogatories the plaintiff stated that it still held the guns; that the value of the goods was the price paid for the goods at the sale; that defendant made the purchase through her agent, Mrs. Bowater; that both sales were conducted under the terms and conditions set out in the catalogues; and that there was no custom or provision for a defaulting purchaser to pay 15% and be relieved of the purchases.

The conditions of sale printed in the catalogues provided in part under VI as follows:

" * * * If, at the expiration of Two Days after the conclusion of the sale, unless otherwise agreed, the lots are not cleared or paid for, they may then be sold immediately, either publicly or by private treaty, without any notice being given to the defaulter."

and under VII as follows:

"Upon failure of the buyer to comply with any of the above conditions, the money deposited in part-payment shall be forfeited; and the defaulter at this sale shall make good any loss arising from the re-sale, together with the charges and expenses in respect of both sales."

At this place we point out for explanation and clarification the following circumstances shown or described from the record. The total amount of the sales was 10,480 pounds and 15% thereof is 1572 pounds. The credit on the account was 1571 pounds, 2 shillings, and 3 pence, a difference of 17 shillings and 9 pence, or about $2.50. Defendant urges in this court that this difference was a tariff or exchange charge. Neither of the earlier two checks was honored by the Wichita Falls bank, so they obviously were not responsible for the credit on the account. This leaves for consideration the third check, which was forwarded by defendant's letter of April 17, 1965, to Mrs. Bowater, who sent both letter and check with a forwarding letter on to plaintiff. The state of the record, at the time of hearing the motion for summary judgment, did not specifically disclose the disposition made, or the whereabouts, of this last check, except that it would logically follow from the dates of the letters and the credit that this check was utilized by plaintiff to apply on the purchase and not for the cost of a new sale.

In this connection it is observed that the District Court Judge noticed the credit, but was puzzled as to the source thereof. The defendant's answer actually alleged this last check (tender) was refused. Also, plaintiff's affidavit did not mention using the check, and its letter demanding payment (supra) stated "Nothing has been received." The explanation appears from subsequent proceedings involving defendant's application for new trial based on newly discovered evidence. It was there shown that the check was filled in for 1572 pounds and

used by plaintiff to create the credit, that the check was honored by the bank, and the check, bank statement, with other non-related checks, were delivered to a person who kept defendant's accounts. This person did not know the significance and importance of the check and did not inform defendant when she returned to the United States.

Regardless of the above explanation we are presently concerned with the state of the record at the time the motion for summary judgment was sustained.

Both parties rely solely on the statutes of Oklahoma and authorities applicable in this jurisdiction.

Defendant contends that regardless of all other questions, it was error of law to render judgment for the price of the guns. It is defendant's position that under the circumstances reflected by the record the defendant's liability, if any, would be only for the difference between the market price and the unpaid contract price.

Title 12A, O.S.1961, Sec. 2–703, of Uniform Commercial Code, provides in part that where the buyer wrongfully rejects acceptance of goods, the aggrieved seller may:

"(d) resell and recover damages as hereafter provided (Section 2–706);

"(e) recover damages for non-acceptance (Section 2–708) or in a proper case the price (Section 2–709);"

■ It is our conclusion that those provisions of Conditions VI and VII of the auction sale, supra, providing that upon failure of a buyer to pay, the plaintiff "may" resell and hold the defaulter for any loss arising from the resale and for expenses thereof, is in accord with and comparable to Subdivision (d), supra, and should be considered together as constituting a remedy available to plaintiff. Plaintiff did not proceed under Subd. (d) and elected to seek recovery of the price.

Title 12 O.S.1961, Sec. 2–708 (referred to in Subd. (d), supra, provides that the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages, but less expenses saved in consequence of the buyer's breach.

■ Defendant did not accept the guns, they are still in the possession of plaintiff. The remedy provided by Sec. 2–708 and Subd. (e) of Sec. 2–703, is clearly and distinctly described therein. This measure of damages is essentially the same as that announced in our decisions prior to the adoption of the Uniform Commercial Code. See Consolidated Flour Mills Co. v. Wright, 131 Okl. 22, 267 P. 464, and Rippey v. Bailey, 129 Okl. 296, 264 P. 889. This remedy was available to plaintiff, but plaintiff sought recovery of the price.

This leaves for consideration the statutory provisions governing actions to recover the price of goods.

Title 12A, O.S.1961, Sec. 2–709, states in part as follows:

"(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price

"(a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and

"(b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing."

■ This court has not had occasion to construe the provisions of this statute. Our previous law, 23 Okl.St.Ann. Sec. 31, now repealed, permitted the seller to recover the purchase price when title to the goods had passed to the buyer, even though the seller was still in possession. This is not the meaning or purpose of Sec. 2–709. The "Uniform Commercial Code Comment" im-

mediately following Sec. 2–709, and Anderson's Uniform Commercial Code, Vol. 1, Sec. 2–709.1, pp. 433, 434, state that the purpose of the changes was to make it clear that the passing of title was not material to a price action, but that the section is intended to be exhaustive in its enumeration of cases where an action for the price lies.

■ Applying the provisions of Sec. 2–709 to the present situation, there is nothing in the record to show that the goods were accepted, or that they were lost after risk thereof had passed to defendant, or that plaintiff was unable to resell them at a reasonable price. The record lacked an essential fact, the presence of which was necessary to entitle plaintiff to recover the balance of the price of the goods.

■ Rule 13 of Rules for District Courts, Title 12, Ch. 2, Civil Procedure, Appendix, permits rendition of a summary judgment if it appears that there is no substantial controversy as to any material fact and that any party is entitled to judgment as a matter of law. On motion for summary judgment there can be no trial of fact issues. Flick v. Crouch, Okl., 434 P.2d 256. In the present case there was a complete absence of a material fact and clearly plaintiff was not entitled to judgment for the price of the goods as a matter of law.

The District Court erred in sustaining plaintiff's motion for summary judgment.

Defendant also contends that plaintiff accepted her 15% compromise offer and is barred from maintaining this action.

■ The condition of the record prevents a conclusive consideration of this proposition. As reflected by the above narration of events, the plaintiff's acceptance and use of defendant's check was not a fact actually recognized by either party at the time the summary judgment was granted. This was probably due in part to the English monetary system and to a great extent by the state of defendant's pleadings. Defendant positively alleged that she had *tendered* a sum in excess of the expense of the sales and any loss, but that the tender was refused. This was vastly different from an allegation that she tendered and the plaintiff *accepted* an amount in satisfaction of all liability that defendant had incurred. The actual use and existence of the 15% check only came to light some months after the judgment was rendered, when it was discovered among defendant's records.

■ It is well settled that an accord and satisfaction, or a compromise agreement, in order to be available as a defense, must be specifically pleaded. L. C. Jones Trucking Company v. Jenkins, Okl., 313 P.2d 530.

■ Another aspect of this proposition is that accord and satisfaction is a question of fact to be determined from all evidence the parties may wish to introduce. We are not advised how we may consider this under plaintiff's motion for summary judgment, and in the absence of some pleading raising this issue in the District Court.

In view of our conclusions, supra, the parties may wish to amend their pleadings in some permissible respect upon remand of this matter to the District Court.

In this same appeal, No. 42213, the plaintiff has filed a cross-appeal complaining that the District Court erred in granting an retroactive extention of time to make and serve case made in the appeal, after expiration of the previously granted time.

The judgment was rendered and defendant's motion for new trial was overruled on April 4, 1966, and at that time defendant was given 60 days (to June 3, 1966) in which to make and serve case made. This time passed without any preparation and service being made. On August 3, 1966, after plaintiff had issued execution on the judgment, defendant made application for a retroactive extension of time to make and serve case made. Plaintiff contested the application. Defendant was present and a full hearing was held on the matter.

The application for extension of time and the granting of the extension were made

under authority of 12 O.S.1961, § 962, (Repealed by Laws 1968, C. 290, § 4). The pertinent statute states that the trial court may, from time to time make orders extending the time for the making and serving of a case made, for good cause shown, "and in the exercise of judicial discretion the said court or judge, upon notice to the adverse party, and after hearing, may make such orders after the expiration of the time fixed in the previous order, * * *."

Plaintiff contends the granting of the extension was an abuse of discretion.

The purpose of defendant's testimony was to show that she was a person inexperienced in business affairs and in legal matters and court proceedings to such an extent that she did not understand the necessity of some prompt action to protect her rights to appeal. Plaintiff's contention is that defendant in reality is experienced in these matters.

Defendant's testimony was that she was in Europe, where her children were attending school, from before April 4, 1966, (date of judgment and overruling of motion for new trial) to July 25, 1966, when she came back to Ardmore, Oklahoma. She stated she was advised of the rendition of the judgment and of the time given to supersede the judgment a short time after the judgment was entered, but was not informed concerning the time and the necessity of a case made. She said she learned of this when she returned. She stated her age was 62 years, that she had never been sued before, that she had been married three times, one of which was terminated by death and the others by divorce, and that business managers had handled her affairs, and that she had no adult male relatives. There was further testimony reflecting her confusion as to the seriousness of the lawsuit and her apparent inability to recognize the true effect of the judgment against her.

■ We do not find a case where this court has directly passed upon the question of the "judicial discretion" exercised in granting time retroactively in which to

make and serve case made. We believe that the discretion exercised by the court in this situation is like that exercised in granting or refusing a new trial.

In Eberle v. State of Oklahoma ex rel. Dept. of Highways, Okl., 385 P.2d 868, we held that in granting or overruling a motion for new trial, the trial court has a broad discretion and its judgment will not be disturbed on appeal unless it clearly appears that the trial court has abused its discretion.

We have also held that "abuse of judicial discretion" is a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. See In re Crane's Estate (Howard v. Crane), 201 Okl. 354, 206 P.2d 726, 90 A.L.R.2d 524.

■ It is our conclusion that in the present case the court acted in furtherance of justice and did not abuse its judicial discretion when it granted to defendant the extension of time in which to make and serve the case made.

As stated above, in Appeal No. 42686, the defendant appeals from a judgment denying her petition for a new trial on the ground of newly discovered evidence.

There is no necessity for determining the merit of the propositions of error advanced therein by defendant. Our prior determination herein that the court erred in sustaining the motion for summary judgment against defendant renders that appeal moot.

■ There remains for consideration defendant's appeal in No. 42917, in which she contends the District Court erred in overruling her objections, and confirmed sheriff's sale of her real estate to plaintiff on execution issued on the money judgment rendered when plaintiff's motion for summary judgment was sustained. Defendant did not furnish a supersedeas bond within the time originally allowed. Her application for an extension of time in which to do so was denied.

We have held herein that the court erred in sustaining plaintiff's motion for sum-

mary judgment. The money judgment was not valid and it is being vacated.

We have held that where a party plaintiff to an action obtains a judgment therein and purchases at a judicial sale made under the judgment, such purchaser is not a purchaser in good faith, and if the judgment is vacated for error, the title of the purchaser fails. Morgan v. City of Ardmore, 182 Okl. 542, 78 P.2d 785, and see too, Wilkin v. Shell Oil Co., 197 F.2d 42 (10th Cir. 1952).

Our conclusion, that the sale and the title acquired by plaintiff must fail, eliminates any necessity to discuss other grounds urged by defendant for vacation of the sale.

The money judgment rendered April 4, 1966, when plaintiff's motion for summary judgment was sustained, is reversed, and the cause is remanded, with directions to vacate such judgment and the sheriff's sale of defendant's lands, including the order of confirmation and sheriff's deed.

The District Court is further directed to proceed in a manner not inconsistent with the views herein expressed to the end that a proper and valid disposition be made of the action.

All Justices concur.