**TERRY BRICK CORPORATION v. WOODS, Federal Housing Expediter.**

**No. 31, Docket 21396.**

United States Court of Appeals Second Circuit.

Argued Oct. 7, 1949.

Decided Nov. 14, 1949.

Henry Hofheimer, New York City, for appellant; Henry Hofheimer, Jr., New York City, of counsel.

John F. X. McGohey, United States Attorney, New York City, for appellee; Harold J. Raby, Assistant United States Attorney, New York City, of counsel.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This suit was brought under section 6 of the Veterans' Emergency Housing Act of 1946[1] which permits a person aggrieved by any action taken pursuant to any regulation or order issued under authority of the Act to petition the district court of the district in which he resides to set aside such action; but this may not be done "unless the petitioner establishes to the satisfaction of the court that such action is not in accordance with law, is unsupported by competent, material, and substantial evidence, or is arbitrary or capricious." The district court was not satisfied that the challenged action of the Federal Housing Expediter was defective in any of these respects. Accordingly the complaint was dismissed.

The facts are not in dispute, dismissal having been granted on motion in accordance with Rule 12(c) of the Federal Rules of Civil Procedure.[2] The expediter's ac-

---

1. 50 U.S.C.Appendix § 1826, 50 U.S.C.A. Appendix, § 1826.

2. 28 U.S.C.A. foll. § 723.

tion under attack has to do with a regulation issued June 19, 1946, known as "Expediter Premium Payment Regulation No. 1" (hereafter referred to as E. P.P.R. 1).[3] Under this regulation manufacturers of bricks, including the plaintiff, were authorized to file claims for premium payments for any monthly production in excess of their previously established quotas of normal production. Payment of the subsidy on excess production was made by the Reconstruction Finance Corporation, subject to a subsequent audit by the Expediter. If such audit should disclose any overpayment, the brick manufacturer was obligated by contract with the Reconstruction Finance Corporation to return to it the amount of such overpayment. The plaintiff's established normal production quota was 1,637,000 bricks per month, but for the months of January and February of 1947 it was granted an adjusted seasonal quota of 819,000 bricks per month. E.P.P.R. 1, which provided for termination of the subsidy program on May 31, 1947, authorized the Expeditor to amend the termination date, and on February 13, 1947 he notified the plaintiff that the program would terminate February 28, 1947. Before receiving this notice and in reliance on continuance of the regulation, the plaintiff had started the production of 2,346,000 bricks and these were not completely "cooled" until the first week of March. Upon completion of these bricks the plaintiff shut down its plant for several months. Under the regulations a brick manufacturer could compute its quota and its monthly production on either the "fire off" or "cool off" method, but once a choice was made the chosen method had to be used consistently. The plaintiff had previously used the "cool off" method, but in submitting its claim for February 1947 it used the "fire off" method in order to include the 2,346,-000 bricks not fully cooled on February 28th. Upon subsequent audit this claim was disallowed. The plaintiff took an administrative appeal to the Appeals Board. This resulted in a decision "that appellant

should be compensated for such damage as may have been directly suffered by reason of its failure to receive adequate notice of the termination of the regulation on February 28, 1947," and that the amount of such damages should be computed by the Expediter. He decided that the damages should be measured by treating the regulation as though it remained in effect one additional month. In other words, he allowed the plaintiff the premium on so many of the 2,346,000 bricks "cooled" in March as exceeded its normal monthly quota of 1,637,000 bricks. Thereafter Reconstruction Finance Corporation sued Terry Brick Corporation for $9,335, the amount of overpayments to it under the decision of the Expediter. The plaintiff then brought the present suit, praying that the Expediter's decision be set aside and that he be directed to add to plaintiff's February production the bricks which were not "cooled" until early in March.

As an award of damages is not expressly provided for in the statute or regulation, the action of the Expediter appears to be based upon the theory that he has inherent authority to carry out an orderly liquidation of the statutory program. As have the parties, we shall assume that the district court had jurisdiction to review the Expediter's decision, and that it might send the proceeding back to the defendant with proper directions.

Under the Appeal Board's decision, which both parties accepted, the question for the Expediter was what loss did the plaintiff suffer by reason of the inadequacy of the notice of termination. Obviously the loss should be measured by the difference between the plaintiff's actual position and what would have been its position had it received adequate notice. Plaintiff's actual position was that it was not entitled to any subsidy on the bricks in dispute because they were not completed in time for the February computation, and no subsidy was payable on the March production. Had a notice of adequate length been given on February 13th

3. 24 C.F.R., 1946 Supp., § 805.1.

8

the subsidy program would not have been terminated until after the bricks had been completely manufactured and they would have been taken into account in computing the March premium payment. Hence the plaintiff's loss was the amount of the March subsidy and that is just what the Expediter awarded as damages. The argument that his decision was arbitrary and illegal is entirely unpersuasive; on the contrary the decision seems eminently fair and in accordance with legal rules as to damages. Restatement, Contracts, § 329; Williston on Contracts, § 1338.

In arguing that the extension of the regulation for one month as to Terry Brick Corporation was illegal the appellant misconceives what the Expediter did. He did not extend the regulation; he merely awarded damages measured by the subsidy which would have been payable if the regulation had been extended one month.

Judgment affirmed.