Roy R. HARTSELL, Plaintiff,

v.

Horton G. HICKMAN, Defendant.

Civ. A. 406.

United States District Court
W. D. Arkansas,
Harrison Division.

Feb. 26, 1957.

Fitton & Adams, Harrison, Ark., John R. Clark, Kansas City, Mo., for plaintiff.

Walker & Villines, Harrison, Ark., for defendant.

JOHN E. MILLER, District Judge.

This case is before the Court upon plaintiff's motion for summary judgment in his favor and upon defendant's motion for summary judgment in his favor. Each party contends that there is no material issue of fact and that he is entitled to summary judgment in his favor as a matter of law.

The question presented to the Court is whether there is any genuine

issue as to any material fact within the meaning of Rule 56, Fed.Rules Civ.Proc. 28 U.S.C.A. and whether either party is entitled to a judgment as a matter of law. In Marion County Co-Op Ass'n v. Carnation Co., D.C.W.D.Ark., 114 F. Supp. 58, this Court quoted extensively from a number of decisions of the Court of Appeals for this Circuit relative to various phases of the summary judgment rule. The Court will not repeat those quotations here. Suffice it to say that the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party, and all doubts are resolved against him. It is with that rule in mind that the Court must consider the record in this case.

In this complaint the plaintiff, after stating the jurisdictional facts, alleges that:

"On or about November 15, 1954, plaintiff arranged with the defendant whereby defendant would accompany plaintiff on a week-long fishing trip on the streams and lakes of the Ozarks, plaintiff to pay all expense, including but not limited to the cost of gasoline, oil, boats, motors, cabins, food, tackle and $10.00 per day to defendant for guide service."

Plaintiff further alleges that he and the defendant fished on the Bull Shoals Lake on the day of November 16, 1954; that motor trouble developed and it was necessary to return to Harrison, Arkansas, where the motor could be repaired; that the parties were traveling in defendant's car with defendant driving, and the plaintiff fell asleep in the car; that the defendant negligently and carelessly drove his vehicle at a dangerous rate of speed and failed to keep his car under control, thereby causing the car to plunge off the highway into a canyon and injuring the plaintiff.

Plaintiff also alleges:

"In the alternative, plaintiff states that he was asleep in defendant's vehicle, at and prior to the defendant's leaving the highway, and that defendant's car was under the exclusive control and management of defendant, and that his leaving the highway and plunging into said canyon would not have happened if defendant had used the care to which the plaintiff, a farepaying passenger, was entitled."

In his answer the defendant denies any negligence on his part and alleges affirmatively that by reason of the Arkansas Guest Statute the plaintiff has no cause of action against him.

The parties have taken and filed the discovery deposition of the plaintiff and the discovery deposition of the defendant. There has also been filed a copy of a typewritten statement taken by the insurance adjuster representing defendant's insurance liability carrier and signed by the plaintiff.

Plaintiff's first contention is that the facts are undisputed; that the plaintiff was a fare-paying passenger; and that plaintiff is entitled to a summary judgment in his favor on the Guest Statute issue. Contrarily, defendant contends that the facts are undisputed and that he is entitled to a summary judgment on the Guest Statute issue.

In his discovery deposition the plaintiff, inter alia, testified as follows:

"Q. Prior to going on over to the lake was there any discussion about the payment of expenses? A. Yes, he met me that night at the edge of town and then I went to the hotel and he came down and wanted to know about where to go and I told him I didn't know any place, that I would leave it up to him, that I just wanted to go someplace where we would have good conveniences, that I would leave that up to him, that I would pay all expenses.

"Q. What did he say to that? A. He said okay.

"Q. Did he request you to pay the expenses, or was that voluntary? A. Well, I just told him I would.

"Q. He never had asked you to pay the expenses? A. Well no, I just said I would. I told him I

would leave it up to him about where we would stay.

"Q. Did you pay the expenses? A. Yes sir.

"Q. When? A. After I got out of the hospital. He paid them and I refunded them to him.

"Q. How much did you pay? A. I don't just exactly remember, but around twenty or twenty-one dollars. It was the expenses down there and some little things I had him get me while I was in the hospital, all told it was something in that neighborhood.

"Q. Do you recall how you arrived at the figure, did he give it to you? A. Yes, he gave me the figures. ,

    *    *    .*    *    *

"Q. What I mean, this was a friendly fishing trip you would make with any other friend or was there any special arrangements about it other than what you have already told me about agreeing to pay the expenses? A. Just what do you mean?

"Q. Well, there wasn't—you weren't paying him to take you fishing were you? A. There wasn't nothing said about me paying him. I told him that I would pay all the expenses, and of course I expected to give him a tip for going with me if he had spent the week with me.

"Q. When did you discuss that? A. They wasn't no discussion. I just thought I would do that. He said nothing to me about paying him.

"Q. Did you say anything about paying him? A. Nothing except I would pay the expenses of the trip.

    *    *    *    *    *

"Q. Was there anything in your relationship with Mr. Hickman on this fishing trip other than a friendly fishing trip? A. Well, not that I particularly know of. I wanted

to come fishing and he knew where to go."

On December 3, 1954, plaintiff signed a statement (which is a part of the record before the Court) containing the following:

"I was in the Hickman vehicle as an invited guest. We had been to Lake Bull Shoals, fishing, and I left my vehicle at the Hickman residence, and merely rode to the lake to fish. I was not paying anything for this ride, was not sharing any expenses, and our fishing trip was not for profit, for either myself, or jointly with Mr. Hickman."

With regard to this statement the plaintiff in his discovery deposition testified that the insurance agent prepared the statement and that he (plaintiff) then signed it.

In his discovery deposition the defendant, inter alia, testified as follows:

"A. I was down there at a cousin of mine's place and he called me on the phone from somewhere here in town evidently.

"Q. What day was that?

    *    *    *    *    *

"Q. What was the nature of this telephone call? A. Well he wanted to know if I would go fishing with him, and I told him sure, just like I do to everybody, like I would to you, or my wife, or anybody else.

    *    *    *    *    *    *

"Q. Did either of you, or which of you rented a cabin? A. I don't know whose name it was in now. It wasn't paid for until the next day when I was over there and I paid for it the next day.

    *    *    *    *    *

"Q. On or about the time he was discharged from the hospital, I believe you told me when I talked to you before that he handed you a $20.00 bill, is that correct? A. I don't remember no such thing. I don't remember him handing me no $20.00 bill. I told you he might have reimbursed me for the cabin

and stuff, but I don't even remember that.

\* \* \* \* \* \*

"Q. And the boat and other bills you incurred at the boat dock were paid by you, of course, since he was hospitalized? A. Yes sir.

"Q. How much money then did Mr. Hartsell give you on or about the time he was discharged from the hospital? A. I don't remember him giving me any money.

\* \* \* \* \* \*

"Q. Would you say he did or didn't hand you any money on or about the time he was discharged for these expenses? A. So far as I can remember he didn't.

"Q. And if Mr. Hartsell states that he gave you a $20.00 bill, what would you say about that testimony, or gave you some money? A. I don't dispute his word, but if he did it was to reimburse me and that's like I told you—I don't remember."

In view of the defendant's testimony that he does not remember receiving any money from plaintiff and the statement made by plaintiff to the insurance agent that he was not paying anything for the ride, the Court is unwilling to say, as a matter of law, that plaintiff actually paid the defendant for the expenses incurred on the trip. Moreover, even assuming that such payments were made, there is still a material issue of fact as to whether the payments were of such a character as to constitute plaintiff a fare-paying passenger.

In Corruthers v. Mason, 224 Ark. 929, 277 S.W.2d 60, the defendants admitted that they took their truck on fishing trips and that passengers would pay them $1.00 each "to help defray the cost of the oil and gas". The plaintiffs denied that the $1.00 "was merely to pay the cost of the gas and oil". At page 932 of 224 Ark., at page 62 of 277 S.W.2d, the court said:

"In the light of this evidence, we hold that a Jury question was made as to the status of Essie Mason— that is whether she was a fare pay-

ing passenger on the one hand, or a guest or joint adventurer on the other. In Albritton v. C. M. Ferguson, 197 Ark. 436, 122 S.W.2d 620, we held that a question of fact was made for the Jury as to the status of one of the occupants of the car. Likewise in Derrick v. Rock, 218 Ark. 339, 236 S.W.2d 726, we held that a question of fact was made for the Jury as to the status of one of the occupants of the car. A good case involving the Arkansas guest statute is that of McMahon v. De Kraay, \* \* \* 70 S.D. 180, 16 N.W.2d 308 \* \* \*.

"We hold that the Trial Court was correct in submitting to the Jury the question as to the status of Essie Mason, and that the instruction was good as against the objections made."

In Brand v. Rorke, 225 Ark. 309, at page 310, 280 S.W.2d 906, at page 907, the court said:

"It is certainly true that, when a trip is undertaken for social and recreational purposes, a passenger may be found to be a guest even though he buys a tankful of gasoline for his host or contributes in some other way to the expense of the journey. Ordinarily, however, the issue is one of fact. Corruthers v. Mason, [224 Ark. 929] 277 S.W.2d 60. Especially is this true with respect to a car pool that is essentially a business arrangement between fellow employees rather than an instance of pure hospitality."

■ Whatever may be the law in other jurisdictions, see Annotation, 10 A.L. R.2d 1351, it seems to be well settled in Arkansas that payments by a passenger to the driver raise a fact issue for the jury (or for the Court in an action tried without a jury) as to whether the passenger is a guest under the Arkansas Guest Statute, Ark.Stats. §§ 75–913 to 75–915, or is a fare-paying passenger.

■ Upon the present record, the Court is of the opinion that neither the plaintiff nor the defendant is entitled to

a summary judgment in his favor on the Guest Statute issue.

Plaintiff's next contention is that the doctrine of res ipsa loquitur applies and that he is entitled to a summary judgment on the issue of negligence. Defendant, on the other hand, contends that the res ipsa loquitur doctrine is inapplicable and that he is entitled to a summary judgment on the issue of negligence.

In his discovery deposition the defendant, while being examined by plaintiff's attorneys, testified as follows:

"Q. Do you know what caused the car to leave the road? A. It didn't leave the road. It rolled on the road. It didn't leave the road until after it was rolling.

"Q. You mean it turned on the highway? A. Yes sir, it seemed to me like something locked about the right front wheel, I would say, but I have drove a car a lot and never had nothing like that happen to me.

"Q. Did it just do it suddenly? A. Sure, it was sudden."

The plaintiff now contends that he was asleep at the time of the accident and does not know the exact cause thereof. But in the statement plaintiff signed, he said:

"I do not blame Mr. Hickman in any way for this accident. He was not operating the vehicle in a careless manner, and at no time did I notify him that I wanted out of the vehicle, due to his manner of operation."

With regard to this statement the plaintiff in his deposition testified:

"Q. The composition of that statement—was it prepared by you or prepared by this insurance man? A. He wrote it, and asked me to sign it.

"Q. Did you tell him you didn't blame Hickman for this wreck? A. I told him I didn't—that it was just an accident—that I didn't think he could avoid it.

"Q. Did you mean it wasn't intionally done? A. No.

"Q. You didn't have any personal animosity toward him? A. I told him I didn't think he did it on purpose, that it was just an accident.

"Q. Have you seen that statement since it was prepared for you? A. No."

The Court agrees with plaintiff's contention that this is a proper case for the application of the res ipsa loquitur doctrine. The plaintiff was asleep and while the defendant had complete control and management of the automobile, it for some reason turned over and caused certain injuries of which plaintiff complains. No other vehicle was involved in the accident. Thus, all the elements necessary for the application of the res ipsa loquitur doctrine are present, i. e., the defendant had complete control and management of the vehicle; the accident was such that would not occur in the ordinary course of events if the driver was using proper care; and the record before the Court tends to show negligence on the part of the defendant and no one else. See, Coca-Cola Bottling Co. of Helena v. Mattice, 219 Ark. 428, 243 S.W.2d 15, 29 A.L.R.2d 1379. See also, 6 Ark.Law Review, 76, 77, where it is said:

"A passenger in a private automobile sustaining an accident that does not involve another vehicle may in a proper case be entitled to the benefit of res ipsa loquitur. Kruzie v. Sanders, 1943, 23 Cal.2d 237, [143 P.2d 704], 135 P.2d 710. * * *

"The courts do not hesitate to apply res ipsa where it can be said as a matter of common knowledge that the accident would not have occurred in the absence of negligence. Thus where a car swerves from the road causing personal injury or property damage, the doctrine generally has been invoked. Fenstermacher v. Johnson, 1934, 138 Cal.App. 691, 32 P.2d 1106 (passenger) * * * One court thought it a matter of common knowledge that automobiles as they are made today do not ordi-

narily leave the highway without negligence by the driver. Iannuzzi v. Bishop, 8 N.J.Misc. 609, 151 A. 477 (Dist.Ct.1930)."

It does not follow, however, that plaintiff is entitled to a summary judgment in the instant case. The doctrine of res ipsa loquitur "does not shift the burden of proof on the whole case from the plaintiff to the defendant but simply requires the defendant to go forward with the production of testimony." Reece v. Webster, 221 Ark. 826, 256 S.W. 2d 345, 347.

And in Coca-Cola Bottling Co. of Helena v. Mattice, supra, the court, at page 432 of 219 Ark., at page 18 of 243 S.W.2d said:

"These cases hold that where a defendant offers proof to offset the presumption of negligence raised by the doctrine, the question whether he has done so is for the jury to determine under proper instructions.

\* \* \*

"The presumption of negligence raised by the res ipsa loquitur doctrine will ordinarily carry the plaintiff's case to the jury and does not take flight on the presentation of rebutting evidence."

In the case at bar the defendant in his discovery deposition testified that "it seemed to me like something locked about the right-front wheel". If the defendant was telling the truth, it may well be that the accident was caused by mechanical failure of the automobile, and defendant would not be guilty of negligence unless he knew or should have known of the defect. It should also be remembered that the depositions filed herein are merely discovery depositions and in the ordinary course of events will not even be admitted in evidence at the trial if the parties are present and testify. And in this connection, the Court has had no opportunity to test the credibility of the witnesses by observing their demeanor while testifying, and this is a matter of great importance in a negligence action.

In Aetna Ins. Co. v. Cooper Wells & Co., 6 Cir., 234 F.2d 342, 344, the court said:

"There is eminent authority in support of the proposition that issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved for trial in the ordinary manner. 6 Moore's Federal Practice (second edition) 2232, Note 4 and cases cited. We think the question presented here as to defendant's negligence falls within this general rule and should not be decided finally by summary judgment."

The foregoing authorities convince the Court that neither of the parties is entitled to a summary judgment on the issue of negligence. And this is true even though the case may be tried to the Court without a jury, because, as above stated, it is important that the Court have an opportunity to observe the witnesses while testifying. In the instant case the Court feels that it should have this opportunity before deciding the two questions involved, that is, the applicability of the Guest Statute and the question of negligence of the defendant.

Therefore, an order is being entered today denying plaintiff's motion for summary judgment and denying defendant's motion for summary judgment.