**J. E. NORTHRIP, Appellant,**

v.

**MONTGOMERY WARD & CO., a foreign corporation, et al., Appellees.**

**No. 45677.**

Supreme Court of Oklahoma.

Nov. 12, 1974.

Michael G. Smith, Ada, for appellant.

Frank H. Jaques, Ada, for appellee, Montgomery Ward & Co.

Richard L. Carpenter, Jr., Sanders, McElroy & Carpenter, Tulsa, for appellee, ESB, Inc.

Maurice E. Lampton, Sapulpa, for appellee, Gould, Inc.

DOOLIN, Justice.

■ This matter is before us from an order sustaining motions for summary judgment in favor of the Appellees (Defendants below). We feel called upon to first decide: If Appellees (Defendants below) may present new issues, arguments and authorities to sustain the trial court's granting of summary judgment which, if raised at time of hearing motions, would have presented a material fact and issue for determination.

We hold they cannot.

A recital of the pleadings and facts is necessary. Plaintiff alleged that he purchased a Ward's Riverside battery from Montgomery Ward (Ward's) in Ada, Oklahoma, in October of 1968, thereafter installing same in his International bulldozer. On or about May 1, 1969, while the dozer was being operated, the battery cables became loose; he then stopped operation, left the motor running, took a pair of ordinary pliers and commenced to adjust the battery cables. He alleged that as he tapped lightly on the cables the battery exploded, causing a fire that destroyed and damaged his equipment to the extent of $4,765.22. His allegation that the explosion was the proximate cause of the fire followed and then Plaintiff alleged that Riverside was a Ward's brand name and that the battery was manufactured for Ward's by the Defendants Gould, Inc., or ESB, Inc., and that Ward's and either Gould or ESB, whichever was the manufacturer, had impliedly or expressly warranted that the battery was free from defects in materials and workmanship and was fit and safe for proper use. He then followed with an allegation of tort liability (negligence) for the breach of a duty owed in marketing a dangerous battery or failing to use the highest standards of workmanship and quality materials, etc. He finally alleged that Ward's and the manufacturer of the battery were liable under the theory of strict liability in tort. His prayer was in the amount set out aforesaid and that the parties Defendant should be required to

determine among themselves or to inform him as to who had made the battery.

Various special appearances, motions, demurrers, requests for admissions, etc., followed and in due course answers were filed separately by Gould in the form of a general denial; by ESB in the form of general denial, contributory negligence, failure to notify under 12A O.S.1971, § 2–207(2)(c); and, by Ward's in the form of a general denial, contributory negligence, misuse of the product, and unavoidable casualty. Ward's also filed a cross-petition against ESB, Inc., which it alleged had manufactured the battery, seeking judgment against ESB if judgment was rendered against Ward's for any sum.

Before and after the answers were filed, interrogatories, depositions and requests for admissions were made by the parties Defendant, and in May of 1971 all of the Defendants filed motions for summary judgment which were heard by the trial court on May 21, 1971. They were taken under advisement, and ruled upon on March 22, 1972—when the trial court sustained all Defendants' motions for summary judgment.

Plaintiff thereafter made timely appeal.

■ A search of the record indicates that at no time prior to the hearing or ruling on Defendants' motions for summary judgment was an attack made upon the parties in interest or the substantial interest of the Plaintiff. It appears that after the trial court's sustaining all Defendants' motions for summary judgment and after the Appellant/Plaintiff had filed his petition in error and perfected his appeal in this Court on April 21, 1972, and after the Appellant had filed his brief on July 25, 1972, the Appellee/Defendant ESB filed with the trial court a motion to perpetuate testimony under 12 O.S.1971, § 538.7. On September 12, 1972, Appellee/Defendant ESB's motion to perpetuate testimony was sustained and thereafter interrogatories were submitted to the Appellant/Plaintiff under 12 O.S.1971, § 549. On October 19, 1972, the Appellant admitted he had been paid by his fire insurance carrier at least the sum of $4,765.22, the amount of his prayer, and that such payment was made prior to filing his petition.

On November 3, 1972, the Appellees ESB and Ward's filed motions to dismiss in this Court alleging that the Appellant's damages of $4,765.22 had been paid to Appellant by his fire insurance carrier and that under 12 O.S.1971, § 78 [1] Appellant/Plaintiff had no pecuniary or substantial interest in the outcome of the litigation and was not an aggrieved party under such statute.

The motions to dismiss filed by Appellees Ward's and ESB lead us to the consideration of 12 O.S.1971, § 221 [2]—the real

---

[1]. 12 O.S.1971 § 78: "The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

See Whitman v. Whitman, 397 P.2d 664 (Okl., 1964):

"Where the adjudication complained of on review does ont operate, by its own force, to impose a burden or obligation and has no binding effect against the rights, person or property of the party seeking to appeal, such party is not aggrieved thereby. . . . To render a party aggrieved by a decision, its adverse effect must be direct, subsisting and immediate rather than contingent on some possible, remote consequence or a mere possibility of an unknown future eventuality. . . . "

See also Swan v. Home Savings & State Bank, 148 Okl. 42, 297 P. 250 (1931); In re Muskogee Gas & Electric Co., 83 Okl. 167, 201 P. 358 (1929); Muller v. Campbell, 97 Okl. 91, 222 P. 980 (1924); American Fidelity & Casualty Co. v. American Bus Lines, 178 F.2d 7 (10th Cir. CA).

[2]. 12 O.S.1971 § 221: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in this article but this section shall not be deemed to authorize the assignment of a thing in action, not arising out of contract."

We are particularly referred to McMahan v. McCafferty, 205 Okl. 656, 240 P.2d 443 (1952), Syllabus 3:

"Where an insurance company pays to the assured a loss occasioned by the wrong of a third party, and the value of the property destroyed by the fire does not exceed the real

party in interest statute, and 12 O.S.1971, § 235 [3]—which allows an action to be conducted upon the death or transfer of the original party in the name of his assignee or in the name of the original party as trustee for the real party in interest.

Appellant, upon receipt of the motions to dismiss as filed in this Court by Ward's and ESB, took two actions. On November 15, 1972, he filed in this Court a motion to increase his prayer from $4,765.22 to $4,800.22, alleging the additional $35.00 was the cost of replacing the exploded battery; and, on November 27, 1972, he responded to the motions to dismiss alleging that Ward's and ESB had waived their right to raise the issue of parties and their substantial rights by not presenting the issue to the trial court by demurrer, answer, or other pleading, including motions for summary judgment.

When we recently dealt with Rule 13, 12 O.S. Ch. 2, App.[4] in Perry v. Green, 468 P.2d 483, 489 (Okl.1970) we stated:

"A motion for summary judgment, under Rule 13 of this court's uniform rules for the guidance of the district, superior and common pleas courts of this state, as adopted on March 15, 1965, should be denied if the facts concerning *any issue raised* by the pleadings, as set forth in the depositions, admissions, answers to interrogatories, and affidavits on file in the case when such motion is filed, and as set forth in affidavits thereafter filed in opposition to such motion and meeting the requirements of said Rule 13, are conflicting, or if reasonable men, in the exercise of a fair and impartial judgment, might reach different conclusions from undisputed facts concerning any issue as set forth in such instruments." (Emphasis supplied.)

We affirm this rule and in so doing, point out that the motion for (summary) judgment where facts are controverted should be denied "if the facts concerning *any issued raised* by the pleadings" are conflicting or disputed. The issues argued by the Appellees here had not been raised in the trial court, although nothing precluded the Appellees from testing the necessary parties or the interest of said

---

amount paid by the insurance company, the insurance company may bring an action in its own name against the wrongdoer and recover the value of the property destroyed."
and continuing at page 446:
"Under this rule the plaintiff was not entitled to recover any amount, having been paid in full by an insurance company; and the action should have been brought, either by the insurance company in its own name, or by the plaintiff as trustee for the insurance company."
See also Great Western Motor Lines, Inc. v. Cozard, 417 P.2d 575 (Okl., 1966).

3. 12 O.S.1971 § 235: "An action does not abate by the death or other disability of a party, or by the transfer of any interest therein, during its pendency, if the cause of action survive or continue. In case of the death or other disability of the party, the court may allow the action to continue by or against his representative or successors in interest, upon such terms and in such time as may be just under the circumstances presented. In case of any other transfer of interest, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action."

Again see Great Western Motor Lines, Inc. v. Cozard, supra.

4. Rule 13: "A party may move for judgment in his favor on the ground that the depositions, admissions, answers to interrogatories, and affidavits on file, filed with his motion or subsequently filed with leave of court show that there is no substantial controversy as to any material fact. The adverse party may file affidavits and other materials in opposition to the motion. The affidavits which are filed by either party shall be made on personal knowledge, shall show that the affiant is competent to testify as to the matters stated therein, and shall set forth facts that would be admissible in evidence. The court shall render judgment if it appears that there is no substantial controversy as to any material fact and that any party is entitled to judgment as a matter of law. If the court finds that there is no substantial controversy as to certain facts or issues, it shall make an order specifying the facts or issues which are not in controversy and direct that the action proceed for a determination of the facts or issues. * * * "
We are not unmindful that Rule 13 has been amended since hearing motions for summary judgment in this case; however, the changes are not material.

parties in the recovery at the time of the motions for summary judgment. We believe we should limit the inquiry on appeal to "any issue raised by the pleadings", Perry v. Green, supra, not what could have potentially been an issue and might have been raised by the Appellee. If all issues of the parties in this case and their substantial rights had been presented at the trial level, it becomes clear that an issue which was a material one then existed and until the same had been properly dealt with, it would be a bar to granting summary judgment. This interpretation we believe is in harmony with the Federal Procedural Rules (see Rule 56, 28 U.S.C.A.) and 6 Moore's Federal Practice, 2nd Edition, 2051, 56.03. The discussion in 6 Moore's Federal Practice, supra, indicates that the Federal courts have held that a motion for summary judgment goes to the merits and is in the nature of a bar, not an abatement. Certainly an order granting summary judgment against this Appellant has not barred the Appellant's insurance carrier from filing a cause of action. In Shafer v. Reo Motors, 205 F.2d 685 (3rd Cir. CA) that court observed:

"The ruling on motion for summary judgment is to be made on record the parties have actually presented, not on one potentially possible."

We have held many times that the Supreme Court is confined to issues presented by the record. See: Ajax Contractors, Inc. v. Myatt, 424 P.2d 30 (Okl., 1967); McGhee v. McAllister, 474 P.2d 940 (Okl., 1970), and Board of County Com'rs of Choctaw Co. v. Schuessler, 358 P.2d 830 (Okl., 1961). Although it can be argued that the record as now constituted does contain evidence of payment of at least $4,765.22, nonetheless under the facts and circumstances presented we refuse to dismiss this appeal. Although distinguishable on the facts, we believe the recent case of French v. Sotheby & Co., 470 P.

2d 318, 322 (Okl., 1970) supports our holding, for as dicta we indicated:

" . . . we are presently concerned with the state of the record at the time the motion for summary judgment was sustained."

In *French* we reversed the trial court's sustaining a motion for summary judgment on the existence of a material fact at issue as defined in 12A O.S.1971, § 2–709 and refused to consider the after-discovered evidence which would have sustained a defense of accord and satisfaction, simply because the same had not been pleaded and was not an issue. At page 323 of *French*, supra, we stated:

"We are not advised how we may consider this (answer alleging accord and satisfaction) under plaintiff's motion for summary judgment, . . . in the absence of some pleading raising this issue in the District Court." (parenthetic phrase supplied).

We next should determine whether under Rule 13, supra, there was a substantial controversy as to a material fact.

Plaintiff's petition alleges three theories of recovery: warranty, negligence, and strict liability in tort. We decided in Kirkland v. General Motors, 521 P.2d 1353 (Okl., 1974) that prior to that case we had not adopted a strict liability theory of recovery and although we may be tempted to apply such doctrines as found therein to this matter, we recall that its application was adopted prospectively and for cases for trial from and after the issuing of the mandate therein. We note that the mandate has issued.

Rule 13 was promulgated by this Court under its powers granted by Art. VII, Sec. 6 of the Oklahoma Constitution and 12 O.S.1971, § 74 and 20 O.S.1971, § 24. The Rule was adopted by this Court on March 15, 1965. Historically, summary judgment rules were first applied to actions ex contractu[5] and most probably originated

5. The Summary Judgment, 38 Yale L.Rev. 423 (1928); 6 Moore's Federal Practice, 2nd Edition, 2071, 56.05.

from the common law right in trial courts to strike sham and frivolous pleadings. When Justice Cardozo, while an associate justice of the Court of Appeals in New York in 1925, noted in Curry v. Mac-Kenzie, 239 N.Y. 267, 146 N.E. 375:

"To justify a departure from that course (usual course of trial) and the award of summary relief, the court must be convinced that the issue is not genuine, but feigned, and that there is in truth nothing to be tried." (parenthetical phrase supplied).

the renowned Justice was applying Rule 113 of the New York Civil Practice Act to an action ex contractu. His reference to the issue and the quote is alive and viable for us today in the consideration of modern rules, for a pleading may be fair on its face but false or frivolous in fact.

In Perry v. Green, supra, and in Flick v. Crouch, 434 P.2d 256 (Okl., 1967), we observed that Rule 13 was patterned after Rule 56 of the Federal Rules of Procedure. The Federal cases under Rule 56 therefore have undoubted special application and are entitled to such consideration by this Court.

■ Rule 56 was the first instance of any rule or statute which authorized the application of summary judgment procedures to *all* civil actions and to any and all types of claims and issues that may arise in such actions. See 6 Moore's Federal Practice, 2nd Edition, 2011, 56.01. This same author [6] notes in his last mentioned treatise at 2583, 56.17(42):

". . . we start with the general proposition that issues of negligence, including such related issues as wanton or contributory negligence, are ordinarily not susceptible of summary adjudication either for or against the claimant, . . . . [7] Rogers v. Peabody Coal Co. (C.A. 6th Cir., 1965) 342 F.2d 749, 9 FR Serv.2d 56c.41, Case 1; Aetna Ins. Co. v. Cooper Wells & Co. (C.A. 6th Cir., 1956) 234 F.2d 342; Roucher v. Traders & Gen. Ins. Co. (C.A. 5th Cir., 1956) 235 F.2d 423, 23 FR Serv. 56c.41, Case 6; Furlong v. Stichman (SD NY 1959) 24 FRD 400; Alabama Great Southern R. Co. v. Louisville & Nashville R. Co. (C. A. 5th Cir., 1955) 224 F.2d 1 (wanton negligence involved; summary judgment for defendant reversed); Cellini v. Moss (C.A. DC 1956) [98 U.S.App.D.C. 114] 232 F.2d 371; Stace v. Watson (C.A. 5th Cir., 1963) 316 F.2d 715; Meeks v. Appalachian Power Co. (SD W Va 1960) 180 F.Supp. 469 (denying summary judgment for defendant); Calhoun v. Northeast Airlines (SD NY 1959) 180 F.Supp. 532 (denying summary judgment for plaintiff); Edwards v. Mazor Masterpieces (C.A. DC 1961) [111 U.S.App. D.C. 202] 295 F.2d 547, 5 FR Serv.2d 8a.-432, Case 1 (Summary judgment for defendant reversed); Hartsell v. Hickman (WD Ark 1957) 148 F.Supp. 782, 24 FR Serv. 56c.41, Case 1 * * *"

■ This Court has three times dealt with Rule 13 in negligence actions [8] since

---

6. James Wm. Moore, Sterling Professor of Law, Yale University.

7. See also 73 Am.Jur.2d Summary Judgment § 6:
"Although summary judgment is available in a proper case in actions grounded in negligence, it is not usually as feasible in negligence cases as in other kinds of litigation, because issues of negligence, including contributory negligence, are not ordinarily susceptible of summary adjudication for or against the plaintiff or claimant. What adds both to the intrinsic procedural difficulty of summary judgment and to some of the confusion in dealing with the device in negligence actions is that even though there is no dis-

pute about how an accident occurred, the presence or absence of negligence often remains a question of fact which requires a trial under traditional principles of the law of negligence. While it cannot be said that under no circumstances can the question of gross or wanton negligence be disposed of on summary judgment, most of the cases have resulted in a holding that summary judgment was not proper under the circumstances of the particular case. In some cases, however, summary judgment has been granted." (citing cases)

8. In Purvis v. Midwest City, 450 P.2d 890 (Okl., 1969) Rule 13 was applied to a question of governmental immunity not to the existence or nonexistence of negligence.

its adoption. Flick v. Crouch, supra; Perry v. Green, supra; and Runyon v. Reid, 510 P.2d 943 (1973). In *Flick* denial of summary judgment was approved; in *Green* and *Runyon* we approved the granting of summary judgment. Each case must, we believe, be judged on its own particular and peculiar pleadings, facts, supporting affidavits, depositions, etc.

■ In the instant case, there is little doubt that the pleadings indicate the presence of conflicting issues of fact. The Plaintiff in his Petition alleges a breach on the part of the manufacturer of the wet-cell storage battery in question of its implied warranty of fitness for its intended use. This does not appear to be an allegation of a breach of a Uniform Commercial Code warranty with its accompanying limitations which are raised in defense, but an allegation of breach of warranty of fitness recognized in Marathon Battery Company v. Kilpatrick, 418 P.2d 900 (Okl., 1966). In this regard, the Petition alleges defective or negligent construction of the subject storage battery. The answers of the seller of the battery and the alleged manufacturer of the battery deny this allegation, and thus put it at issue as a conflicting issue of fact. The answers also go on to interpose the possible defenses of contributory negligence, misuse of product, and unavoidable accident. These defenses also put at issue conflicting issues of fact regarding the Plaintiff's conduct and the explosion.

Considering the motions for summary judgment in the light most favorable to Plaintiff and applying the same standard to the affidavits, deposition and admissions, there remains a genuine controversy as to the material quality of the product, suggesting a defect. There is a genuine controversy as to whether, under the circumstances and facts, a duty was breached by one or more of the Defendants and of course the Plaintiff should be entitled to prove a negligent reason for the explosion. Not only do the pleadings which frame the issues for trial, but likewise the thrust, scope and purport of the affidavits and like material, raise questions which are material in nature and can only be determined by a jury. Plaintiff did indicate by his admissions that *he would have evidence* at the time of trial as to the chemical and physical makeup of the battery and viewing this statement in a light most favorable to the party opposing the motion (Plaintiff) certainly raises an issue of negligence.

In the deposition available to the trial court for consideration, Plaintiff testified to being an experienced mechanic and dozer operator. He testified that the equipment which had burned was sometimes left where it was available or accessible to the public and was not under constant surveillance. He acknowledged that he did not have the battery in question and had made no tests. Plaintiff described his action at the time of the explosion; he had been lightly tapping on the battery cables while the dozer was running. As we analyze the deposition, admissions, affidavits and pleadings, we believe them to be made of the "stuff reasonable men could differ about" or "grist for the jury."

The deposition of Ward's employees had no effect other than cumulative. There were, to be sure, certain objections made to the testimony of the Ward's employees, but these objections went to the question of hearsay and credibility of the Ward's witnesses and the records of that company. They were not sufficient to have ruled out the possibility that proof of the manufacturer of the battery could not be established, which may or may not have been crucial to Plaintiff's case.

Analysis of all available pleadings, depositions, etc. on hand and considered by the trial court at the time of the motions for summary judgment leads us to believe that a substantial controversy of material facts existed and that this cause must be reversed. Reasonable men in the exercise of fair and impartial judgment might have differed or reached opposite conclusions as to the actions of the Plaintiff at the time of the explosion.

That the battery is unavailable is not persuasive. Certainly the principles of the operation of a common wet-cell storage battery are not unknown to a trial court or to a jury in this day and age, to say nothing of the fact that the chemical makeup, operation, and danger of a battery is easy to establish. Plaintiff alleged the battery was not fit and safe for use as a source of electrical power; he alleged a breach of warranty; and, that the explosion was the proximate cause of his damages and a result of defective materials. He alleged that Ward's and the manufacturer owed a duty to produce a battery from the highest type of materials, to inspect their products, and that Ward's and the manufacturing defendant had breached such duty.

The Defendants, in short, ask us to conclude that difficulty of proof of defect or negligence, because of the non-availability of the battery for scientific testing, should be the deciding element in establishing the existence of controversial issues of fact. This we decline to do. In an explosion case it may very well be that the product cannot be recovered because it has been disintegrated or atomized. We find no convincing authority, nor are we cited to any, that would not allow proof of negligence or proof of defect by circumstantial evidence, expert opinion, or other evidentiary rule. *Marathon Battery Co.*, supra, decided by this Court, dealt with a dry-cell battery, but we think it equally applicable to an even more dangerous wet-cell battery and *Marathon* did represent the prevailing view of this Court at the time of hearing motions for summary judgment. See Underhill et al. v. Anciaux, 68 Nev. 69, 226 P.2d 794 (1951) for a case dealing with food poisoning where not enough of a sample of a bottled drink existed to scientifically analyze or test.

No less an authority than the Supreme Court of the United States has held in United States v. Diebold, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176:

"On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."

See also Adickes v. S. H. Kress, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142; United States v. Kansas Gas & Electric Co., 287 F.2d 601 (10th Cir. C.A.); United States v. Farmers Mutual Ins. Association, 288 F.2d 560 (8th Cir. C.A.); Moutoux v. Gulling Auto Electric, Inc., 295 F.2d 573 (7th Cir. C.A.), and, Paroczay v. Hodges, 111 U.S.App.D.C. 362, 297 F.2d 439. This approach to summary judgment proceedings was not followed by the trial court; we would adopt it for Oklahoma.

It is inferred by the Defendants that because the procedure on summary judgment has been developed to expedite and relieve the court from the trial of issues when no controversy exists, the trial court is justified in considering the matter as to whether it will ultimately be required to direct a verdict for one party or the other. In Pierce v. Ford Motor Company, 190 F.2d 910 (4th Cir. C.A.) that court held:

"* * * It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to *try the case in advance* on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented. * * *" (emphasis supplied.)

See also Coca v. Arceo, 71 N.M. 186, 376 P.2d 970, 976 (1962).

We find it unnecessary to consider whether or not a party may amend his Petition after the appeal has been lodged in this Court, for we reverse the granting of summary judgment in this case and remand the same to the District Court of Atoka County for proceedings not incon-

sistent with this opinion, noting however that nothing herein is to be considered as in any way inhibiting the trial court at the conclusion of the evidence from finding same to be insufficient to warrant submission of the matter to the jury.

Reversed and remanded.

WILLIAMS, V. C. J., and HODGES, LAVENDER and DOOLIN, JJ., concur.

IRWIN and BARNES, JJ., concur in result.

BERRY, J., concurs specially.

DAVISON, C. J., and SIMMS, J., dissent.

BERRY, Justice (specially concurring):

I concur specially in the majority opinion but do not believe it precisely states applicable rules to determine when summary judgment should be granted for defendant and when plaintiff is required to present evidentiary materials in opposition to defendant's motion for summary judgment.

When defendant moves for summary judgment he must show there is no substantial controversy as to one material fact of plaintiff's cause of action and this fact is in defendant's favor, or show there is no substantial controversy as to all material facts constituting an affirmative defense. Runyon v. Reed, Okl., 510 P.2d 943.

Plaintiff's petition alleges Ward's and the manufacturer are liable because they failed to instruct him as to potential danger in use of the battery under normal conditions, or are liable under principles of negligence, warranty, or strict liability because it was defective.

Defendants contend summary judgment was proper because plaintiff must prove the battery was defective when it left their possession and the evidentiary materials indicate he will not be able to do so.

These evidentiary materials indicate plaintiff had the battery for at least six months; it was not a sealed container; plaintiff checked it and added water to it; the bulldozer was left unattended and third parties could have tampered with the battery; no tests were conducted upon it to determine cause of explosion; and it is not now available for tests.

This contention ignores plaintiff's allegation defendants had a duty to warn him of dangers involved in use of the battery.

Even if the battery was not defective, plaintiff might be entitled to recover if he could establish defendants breached a duty to warn him the battery might explode and the failure to warn was the proximate cause of his damages. Technical Chemical Co. v. Jacobs, Tex., 480 S.W.2d 602.

None of the evidentiary materials proffered by defendants provide any information concerning propensities of batteries of this type; what warning, if any, was given; or whether the failure to warn was the most likely cause of the explosion.

Since defendants failed to sustain their burden of producing evidentiary materials to establish there was no substantial controversy as to one of the material facts of plaintiff's cause of action under this theory, plaintiff had no duty to produce evidentiary materials to show an issue of fact did exist. Fitzke v. Shappell, 6 Cir., 468 F.2d 1072; 6 Moore's Federal Practice § 56.15(3), p. 2335.

Therefore, the trial court erred in granting summary judgment for defendants.

Furthermore, the evidentiary materials do not establish plaintiff will be unable to prove the battery was defective. In Marathon Battery, Inc. v. Kilpatrick, Okl., 418 P.2d 900, the battery which exploded was a sealed container. We held this fact created an inference which supported the jury's finding the battery was defective at the time it left the possession of the manufacturer.

Defendants contend that case is distinguishable because the wet cell battery involved herein was not a sealed container.

The evidentiary materials upon this point only indicate one could add liquid to the battery. Defendants produced no evidentiary materials concerning characteristics of wet cell batteries, or how handling of the battery subsequent to the time plaintiff acquired it might have caused the explosion.

Therefore, it is my opinion the evidentiary materials do not establish plaintiff will be unable to prove there was a defect in the battery at the time it left defendants' possession.

Defendants do not contend there was no substantial controversy as to any other material fact of plaintiff's cause of action, or that there was no substantial controversy as to all material facts constituting an affirmative defense.

For the reasons stated above I concur specially in the majority opinion.