2008 OK CIV APP 4

**GRAND LAKE MARINA, LTD, d/b/a Marinas International, a/k/a Harbors View Marina, Plaintiff/Appellant,**

v.

**GRAND RIVER DAM AUTHORITY, Defendant/Appellee.**

No. 104,713.

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 28, 2007.

Rehearing Denied Dec. 11, 2007.

Jonathan E. Shook, Mark H. Finnerty, Shook, Huggins & Johnson, P.C., Tulsa, OK, for Plaintiff/Appellant.

Todd E. Kolczun, David E. Jones, Logan & Lowry, LLP, Grove, OK, for Defendant/Appellee.

## OPINION

ADAMS, Judge.

¶1 Grand Lake Marina, Ltd, d/b/a Marinas International, a/k/a Harbors View Marina (HVM) appeals a trial court order granting summary judgment in favor of the Grand Lake River Authority (GRDA) on HVM's petition seeking, *inter alia,* a declaratory judgment that its dock facilities comply with all state and federal rules, regulations, and orders applicable to HVM's commercial dock permit. Based on the undisputed facts shown by the evidentiary materials presented to the trial court, we conclude GRDA is not entitled to summary judgment as a matter of law and reverse the trial court's order.

¶2 In determining whether summary adjudication was appropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and GRDA was entitled to judgment as a matter of law. *Perry v. Green,* 1970 OK 70, 468 P.2d 483. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to HVM. *Ross v. City of Shawnee,* 1984 OK 43, 683 P.2d 535. We are limited to the issues actually presented below, as reflected by the record which was before the trial court rather than one that could have been assembled. *Frey v. Independence Fire and Casualty Company,* 1985 OK 25, 698 P.2d 17.

¶3 To prevail as the moving party on a motion for summary adjudication, one who defends against a claim by another must either (a) establish that there is no genuine issue of fact as to at least one essential component of the plaintiff's theory of recovery or (b) prove each essential element of an affirmative defense, showing in either case that, as a matter of law, the plaintiff has no viable cause of action. *Akin v. Missouri Pacific R. Co.,* 1998 OK 102, 977 P.2d 1040.

¶4 Summary judgment should be granted only if it is perfectly clear that there is no material fact at issue. *Northrip v. Montgomery Ward and Co.,* 1974 OK 142, 529 P.2d 489. For summary judgment to be appropriate, the trial court must not only find there is no substantial controversy as to any material fact, but also that reasonable people could not reach differing conclusions from the undisputed facts. Even if the trial court anticipates that a directed verdict will be necessary, summary judgment must not deprive a litigant of the right to a jury trial of disputed facts. *Flanders v. Crane Co.,* 1984 OK 88, 693 P.2d 602.

¶5 GRDA is both a state agency and a legislatively created conservation and reclamation district within Oklahoma, consisting of 24 counties, including Craig County, and three lakes, including "all that body of land and the water impounded above the Pensacola Dam, Pensacola Project, ... known as Grand Lake O'The Cherokees" (hereinafter, Grand Lake). *See* 82 O.S.2001 §§ 861 and 861A. It has the authority to prescribe and enforce rules for the use of recreational and commercial purposes of the lakes within its district, including the issuance of permits for wharfage, docks or anchoring privileges and to charge fees for such commercial or private permits. *See* 82 O.S.2001 § 862(r). The powers, rights and privileges, and functions of GRDA are exercised by a seven-member board of directors. *See* 82 O.S.2001 § 863.2. For the Pensacola Project, GRDA operates under a license from the Federal Energy Regulatory Commission (FERC or Commission), the federal agency charged with oversight of all hydroelectric projects upon the navigable waterways of the United States, and is subject to regulation by FERC.

¶ 6 HVM owns and operates a large commercial marina facility known as Harbors View Marina (the marina) located in Duck Creek Cove of Grand Lake. It purchased the marina in 1998 from Pete and Jim Howser (the Howsers), who had operated the marina since the mid–1980s. In December 1992, the Howsers sought and received approval from GRDA's Board of Directors for modifications to the marina. The proposed modifications required that GRDA obtain a licensing amendment from FERC, for which GRDA's "General Manager/CEO" applied on or about March 3, 1993. FERC issued an order on April 6, 1993, granting GRDA "authorization to issue a permit to [HVM], for the construction of 102 additional boat slips, rearrangement of 34 existing slips, and construction of 2 breakwaters on [Grand Lake]" (the April 6, 1993 FERC Order).[1] The approved modifications were commenced shortly thereafter, with completion in 1993–94.

¶ 7 Five years later, in February of 1998, the Howsers sold the marina to HVM through its general partner, Marstan Investment Company, LLC (Marstan), all with GRDA's consent to the assignment of the Howsers' Commercial Dock Permit No. CG–50.[2] In June of 1998, HVM proposed changes involving its "interior docks" to GRDA, who then notified FERC of the plans for the approved facilities. Due to the plans and written complaints from several homeowners in the Duck Creek area, members of GRDA's Assets Committee[3] inspected the marina, during which it discovered that one of the "exterior" docks extended further into the lake than was originally approved. Consequently, the Assets Committee placed a "Request by Harbors View Marina for Waiver of 125–Foot/One–Third–of–Cove Rule to Permit Existing Dock" as an agenda item for its special meeting and for GRDA's Board of Directors regular meeting. GRDA's "125 Foot/One–Third–of–Cove" or "cove protrusion" rule restricts floating structures, including commercial docks, to a "total maximum length, perpendicular to the shoreline," of the lesser of (1) 125 feet, or (2) "[o]ne-third of the distance from the adjacent shoreline, measured across the land and water of GRDA, to the nearest opposite shoreline."[4]

¶ 8 FERC, in a letter received by GRDA on July 17, 1998, acknowledged GRDA's "recent inquiry regarding specific changes planned for certain dock facilities" at the marina, the April 6, 1993 FERC Order, and HVM's preconstructed, yet uninstalled dock, stating thereafter that it would "review the matter and compare the authorized facilities with the proposed changes" upon receipt of additional information about such changes. GRDA sent FERC the requested information on August 10, 1998, explaining that since its original contact concerning HVM's proposed changes, "a number of meetings have been held between GRDA, the Harbors View homeowners association and owners of [HVM]," and that "a public hearing on the proposed expansion was held at GRDA's administrative offices on July 9, 1998 before a committee of GRDA's Board of Directors to obtain public view and comments." GRDA

1. Under part (B) of the ORDER APPROVING NON–PROJECT USE OF PROJECT LANDS, it provides "[t]his order constitutes final agency action."

2. The CONSENT TO ASSIGNMENT, executed by Ron Coker, as General Manager/CEO of GRDA and sealed and attested to by GRDA's secretary, provides:

On this 9th day of February, 1998, the GRAND RIVER DAM AUTHORITY, an Agency of the State of Oklahoma created and existing pursuant to 82 O.S.A. § 861 et seq., ("GRDA") does hereby agree and consent to the Assignment of GRDA Commercial Dock Permit No. CG–50 from [the Howsers], d/b/a [HVM], [address], to Marshall Funk and Stan Johnson, d/b/a Marstan, L.L.C., [address].

3. Pursuant to 82 O.S.Supp.2003 §§ 863.2(F)(2) and (Q), the *Asset* Committee is composed of members selected by GRDA's Board of Directors and is chaired by the director appointed by the Governor "to represent economic development interests, lake enthusiasts and property owners." We use the name, "Assets Committee," in this opinion because that is the name used by the parties and used in the October 21, 1998 special meeting minutes of that committee, and the October 21, 1998 regular meeting minutes of GRDA's Board of Directors.

4. Both parties agree that the cove protrusion rule is a long-standing provision of GRDA's Rules and Regulations Governing the Use of the Shorelands and Waters, the latest version being approved May 19, 2004, and that it has been in force in the same form for all years material to this dispute.

then stated "[t]here appears to be virtually no objection to the proposed expansion as presently planned."

¶ 9 By letter dated October 9, 1998, FERC notified GRDA, in relevant part, that comparison of the approved docks with the modified docks reveals both facilities are located "within same general footprint along the shoreline and ... in the same location" and "have the same general impacts on the surrounding area." In the last paragraph, FERC further notified GRDA of its conclusions that "the modifications to the subject dock facilities at [HVM] are in substantial conformity to the dock facilities approved by the Commission in its April 6, 1993 order," "no specific Commission approval is required for the installation and operation of the modified facilities," and "[n]o further action will be taken on this matter."

¶ 10 Relying on the October 9, 1998 FERC letter at the special meeting of GRDA's Assets Committee held October 21, 1998, the members voted to dismiss the agenda item for HVM's request for a waiver of the cove protrusion rule because "it is now moot." After discussion with a member of that committee, GRDA's Board of Directors accepted their recommendation and dismissed the waiver request by a unanimous vote. Six months later, on April 15, 1999, GRDA's General Manager/CEO executed a Consent to Assignment to Marinas International Holding, L.P., agreeing and certifying that HVM's general partner, Marstans, is "currently in compliance" with the permit issued by GRDA, which "is in full force and effect."

¶ 11 The present controversy arose 6 years later when GRDA refused HVM's requests to give it a statement or certificate of compliance with FERC-approved orders and GRDA's rules and regulations which it needed in order to refinance its debts and to sell the marina. GRDA opined that it "has never approved HVM's docks as presently config-

ured" and informed HVM that its dock facilities "in its current configuration, is not in compliance with either GRDA's rules and regulations or the marina configuration currently approved by GRDA."

¶ 12 Thereafter, by electronic mail dated October 14, 2005, GRDA specifically informed HVM's counsel that (1) "[a]t the present time [HVM] has failed to comply" with the cove protrusion rule, (2) "[t]he present location, construction and configuration of docks at [HVM] is has (sic) not been permitted by GRDA," and (3) "until such time as [HVM] either complies with the [cove protrusion rule] or obtains authorization for a waiver of this rule by GRDA's Board of Directors it will remain subject to compliance enforcement action at any time."

¶ 13 After discussions to resolve the controversy stalled out and HVM's request to put the matter on the agenda for GRDA's Board of Directors was declined, HVM filed its petition for declaratory judgment, and GRDA answered. Both parties moved for summary judgment and opposed each other's motion. After oral arguments were held, the trial court filed its order, giving detailed findings of facts and conclusions of law for denying HVM's motion and sustaining GRDA's counter-motion.[5] In HVM's appeal from that order, it alleges the trial court erred in holding that (1) GRDA did not grant it a waiver of the cove protrusion rule, and that (2) GRDA cannot be estopped from asserting that HVM is in violation of that rule.

¶ 14 Concerning these issues, the trial court stated it found HVM's waiver argument "compelling," but because "it is constrained by law and precedent," the trial court found "GRDA has procedures for approval and issue (sic) of a waiver of compliance with the Cove Protrusion Rule and, as found above by the Court, *no waiver has been issued.* GRDA's inaction in that regard does not operate as a waiver by implication."

---

5. The trial court identified "the issue for the Court" as "whether noncompliance of the 'exterior docks' is exempted by reason of estoppel, waiver or operation of a 'grandfather clause.'" Concerning the last issue, the trial court found HVM's contention to be "uncompelling" because the grandfather provision in GRDA's rules and regulations operates "to exempt existing uses from compliance with new regulations" and "the applicable regulations pre-date the Howser's (sic) modifications." We need not address this finding because HVM does not raise it on appeal, and even if correctly decided, it would not be dispositive of the other summary judgment issues.

(Emphasis added.) In the very next paragraph, the trial court found "[l]ikewise, GRDA cannot be estopped from exercising its statutory authority by reason of its prior actions or inactions."

·¶ 15 However, we need not address the trial court's "equitable estoppel" ruling, because it is not the dispositive issue in this case. HVM's summary judgment arguments that (1) by determination letter dated October 9, 1998, FERC *concluded* that "the subject dock facilities at [HVM], are in substantial conformity to the dock facilities approved by the Commission in its April 6, 1993 order," and (2) "[t]he clear language of the minutes of the assets committee and board of directors ... indicate that GRDA *found, and decided,* that it was unnecessary for [HVM] to obtain a waiver of the 'cove protrusion rule'" (emphasis added) are, in essence, arguments that GRDA's Board of Directors' October 21, 1998 determination *precludes or bars* GRDA now from claiming its docks violate the cove protrusion rule.

■■ ¶ 16 As a general rule, the doctrine of preclusion operates to enjoin successive attempts to relitigate the same issue in different forums. *State ex rel. Department of Transportation v. Little,* 2004 OK 74, 100 P.3d 707. Whether the preclusion doctrine will apply *in any particular case* is sometimes a question of law and in others a mixed question of law and fact. It is solely a question of law if (1) the facts are undisputed, (2) the preclusion question may be answered solely by reviewing the judgment put forward as the bar, or (3) the preclusion determination may be made solely by inspection of the record of the proceedings culminating in the judgment put forward as the bar. *Feightner v. Bank of Oklahoma,* 2003 OK 20, 65 P.3d 624.

■■ ¶ 17 Generally, application of preclusion principles to final agency adjudicatory decisions is favored unless there is a statutory intent or directive to the contrary. *Feightner v. Bank of Oklahoma,* 2003 OK 20, 65 P.3d 624. A final adjudicative administrative decision may have the same preclusive effect as the judgment of a court provided that the proceeding in which the administrative decision is made meets the standards for preclusive effect applicable to judicial decisions. For the doctrine to act as a bar in a subsequent proceeding, there must be a final judgment or order in an earlier proceeding that decides an issue again sought to be raised in the later proceeding. *State ex rel. Department of Transportation v. Little,* 2004 OK 74, 100 P.3d 707.

■■ ¶ 18 Informal agency action may be final agency action where *one or more* of the following elements is present: (1) direct and immediate impact on regulated industries as a result of the action; (2) reliance by regulated parties on the action; (3) the agency action is the final agency consideration of the matter or represents the agency's final, crystallized position on the matter in question; or (4) a high level agency official is directly responsible for the action. *American Maritime Association v. Blumenthal,* 458 F.Supp. 849 (D.D.C., 1977), *cert. denied,* 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045; *see also* 2 Am Jur.2d, *Administrative Law,* § 462.

■■ ¶ 19 The undisputed evidentiary materials submitted by the parties clearly demonstrate that all four elements are present in this case, including that the issue GRDA seeks to relitigate, HVM's non-compliance with the cove protrusion rule, was finally determined on October 21, 1998. On that date, GRDA's Board of Directors Assets Committee held a special meeting, the minutes of which reflect that a representative of HVM was present. The first item under the "New Business" section of the "Minutes of Special Meeting," dated October 21, 1998, entitled "a. Request *by Harbors View Marina* for Waiver of 125–Foot/One–Third–of–Cove Rule to Permit Existing Dock" (emphasis added), provides as follows:

> Ms. Von Drehle reported that this matter was placed on the agenda because *she was under the impression that the original docks of [HVM] which extend 125 feet out into the lake had **not** been approved by GRDA for a waiver.* However, she explained that because of the controversy over the large dock [HVM] wanted to install, she received an inquiry from FERC requesting additional information about [HVM]. FERC needed this information to

determine if GRDA was in compliance with its FERC license. Ms. Von Drehle provided them pictures and additional information as requested, and as a result of that information, she *received an order from FERC. The order found the existing docks, as they are presently situated, as well as the requested installation of their large dock,* are substantially in compliance with the previous order issued by FERC in 1993. *As a result of this order, she explained, this present request for a waiver of the 125–Foot/One–Third–of–Cove Rule is now moot and should be withdrawn from the agenda.* (Emphasis added.)

After some discussion on the matter by the board members, the chairman "moved to dismiss the agenda item," because "it is now moot."

¶ 20 Immediately thereafter, GRDA's Board of Directors held a regular meeting. Under the "New Business" section of their "Minutes of Regular Meeting" dated October 21, 1998, item 1 is similarly entitled "Request *by Harbors View Marina* for Waiver of 125–Foot/One–Third–of–Cove Rule to Permit Existing Dock." (Emphasis added.) The Board's *approved* minutes thereafter provide:

> Regarding items (sic) 1, Ms. Von Drehle reported that this item was placed on the agenda *to correct a failure to provide a waiver on [HVM]'s docks when they were approved in 1993.* Since it was originally put on the agenda, *GRDA has received an order from FERC finding that the **existing docks** as they are presently configured **are substantially in compliance with previous orders of FERC and also actions of GRDA with respect to [HVM].*** It is the Assets Committee's recommendation that the request be dismissed as moot *as a result of the FERC order.* (Emphasis added.)

A board member/director moved to dismiss the item, that motion was seconded by another board member/director, and the motion passed with a vote, "7–yes, 0–no, 0–abstained."

¶ 21 Where official authority is conferred on a board or commission, composed of three or more members, and the law provides that a majority thereof shall have power to act, a decision concurred in by a majority thereof when in regular session is valid and constitutes an official act of the board or commission as a whole. *Crawford v. Corporation Commission,* 1940 OK 432, 106 P.2d 806. In light of the undisputed facts that the *exterior* dock has not been moved or modified since its installation by HVM's predecessors and that GRDA discovered the *exterior* dock violated the cove protrusion rule in June of 1998 and placed HVM's request for a waiver of that rule on the agenda for its next meeting, the only reasonable interpretation of GRDA's Board of Directors unanimous vote to dismiss the request "as moot" *based* on FERC's October 9, 1998 letter that HVM's modified dock facilities are in substantial conformity with the facilities approved by the April 6, 1993 FERC Order, is that a waiver was not necessary because the issue had been resolved by FERC.

¶ 22 Other undisputed evidentiary materials support our conclusion that the GRDA's Board of Directors' unanimous vote on the waiver being moot is a final determination. By letter dated January 14, 1999, GRDA confirmed to HVM that (1) "by letter dated October 9, 1998 … [FERC] found that the *existing facilities* are in substantial compliance with their original Order and approval issued in April, 1993, and that no further Commission action would be necessary relative to your project," (2) "[t]he initial installation was approved by both GRDA and FERC in 1993," and (3) "[t]he recent upgrades to your facilities have been inspected and approved by GRDA's Lake Patrol Chief and found to be in compliance with *all requirements* at the present time." (Emphasis added.) Moreover, unlike the general Consent to Assignment given to HVM in February of 1998, GRDA's General Manager/CEO executed another CONSENT TO ASSIGNMENT on April 15, 1999, for the benefit of Marinas International Holdings, L.P., as "a prerequisite to its acquisition of the Marina, assumption of the [Commercial Dock] Permit [NO. CG–50], and assumption of the [two bank loans]," which provides, in relevant part:

NOW, THEREFORE, GRDA hereby *agrees and certifies* that:

1. GRDA has issued the Permit to MARSTAN; MARSTAN is currently in compliance with the Permit, and the Permit is in full force and effect. (Emphasis added.)

¶ 23 Considering the undisputed evidentiary materials before us and that GRDA has never denied HVM's reliance on GRDA's decision, the trial court's summary judgment in favor of GRDA must be reversed. The case is remanded to the trial court with instructions to enter judgment in favor of HVM.

REVERSED AND REMANDED

JOPLIN, P.J., and MITCHELL, V.C.J., concur.