2006 OK CIV APP 22

Bertha HOLLAND, Individually and as the Personal Representative of the Estate of Pat Lee Phillips, Deceased, Plaintiff/Appellant,

v.

URBAN CONTRACTORS, INC., Defendant/Appellee.

No. 100,564.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 7, 2005.

Rehearing Denied Nov. 22, 2005.

Certiorari Denied Feb. 21, 1006.

Micky Walsh, Beeler, Walsh & Walsh, P.L.L.C., Oklahoma City, OK, for Plaintiff/Appellant.

Gerald E. Durbin, II, Glen Mullins, Durbin, Larimore & Bialick, Oklahoma City, OK, for Defendant/Appellee.

## OPINION

ADAMS, Presiding Judge.

¶ 1 Bertha Holland, the mother of Pat Lee Phillips (Decedent) and Personal Representative of Decedent's estate, appeals a trial court judgment in favor of Urban Contractors, Inc. (UCI) on Holland's claim that alleged UCI's negligence and gross negligence in constructing and maintaining hand rails during construction work on the South May Avenue bridge in Oklahoma City, Oklahoma, resulted in her son's death. The trial court granted UCI's motion for summary judgment. Because we conclude summary adjudication was inappropriate based on the evidentiary material presented to the trial court, we reverse and remand the case for further proceedings.

¶ 2 In determining whether summary adjudication was appropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and UCI was entitled to judgment as a matter of law. *Perry v. Green*, 1970 OK 70, 468 P.2d 483. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to Holland. *Ross v. City of Shawnee*, 1984 OK 43, 683 P.2d 535. We are limited to the issues actually presented below, as reflected by the record which was before the trial court rather than one that could have been assembled. *Frey v. Independence Fire and Casualty Company*, 1985 OK 25, 698 P.2d 17.

¶ 3 UCI was hired by the City of Oklahoma City to repair the South May Avenue bridge over what was then known as the North Canadian River.[1] As part of the project, UCI was required to remove the permanent handrails that had been on the pedestrian sidewalks on the bridge and install temporary handrails until new permanent handrails could be installed after the sidewalks were repaired. The temporary handrails consisted of two steel cables running horizontally between vertical steel posts placed approximately 8 to 10 feet apart and attached to the outside of the sidewalk.

¶ 4 On May 30, 2001, Decedent's body was found beneath the west edge of the bridge. How Decedent's body came to be at this location has not been determined. Sergeant Fieley of the Oklahoma City Police Department (OCPD) testified in a deposition that during an investigation conducted on that same day, he observed no facts that would rule out that Decedent had jumped or been pushed off the side of the bridge, but he also testified that "we felt certain that there was no foul play involved in it."

¶ 5 Sergeant Fieley also testified that he and another officer discovered during their investigation that the top cable could be pushed twenty four inches out from the edge of the sidewalk at approximately the point on the bridge directly above where Decedent's body was found. He and the other officer discovered this by pushing against the cable while standing on the sidewalk. Although the cables were visible, the record contains no evidentiary material indicating that the 24-inch "slack" in the top cable was observable before weight was placed against it.

¶ 6 Decedent would often collect cans which had been left by individuals using the river bank for various recreational activities. He used the pedestrian sidewalk on the bridge often, even during the construction, and had been warned by a family member to be careful because it was dangerous. Dece-

---

1. This portion of the river is included in what has now been "designated as the Oklahoma River for economic development purposes." 82 O.S.Supp. 2004 § 1D.

dent had suffered from a seizure disorder since he was approximately nine months old for which he took medication. Although UCI produced an OCPD report of an interview with an individual who stated that she had seen Decedent fall once or twice during a seizure,[2] Holland produced evidence that Decedent never lost consciousness during a seizure.

¶ 7 UCI based its summary judgment motion on two arguments. First they argued that any danger from the cables was "open and obvious" because they were readily observable. However, this argument overlooks the concept of a danger with a "deceptively innocent appearance," recognized in cases such as *Jack Healey Linen Service Company v. Travis*, 1967 OK 213, ¶ 9, 434 P.2d 924, 928. None of the evidentiary material in this record demonstrates, beyond question, that Decedent could or should have seen the danger presented by the slack in the top cable. Summary adjudication was not appropriate on UCI's "open and obvious" theory.

¶ 8 Second, UCI argued that summary adjudication was appropriate because "[Holland] has failed to set forth any evidence that is sufficient to support the reasonable inference that the death of [Decedent] was caused by any negligence on the part of [UCI]." It supports this argument by pointing to the lack of evidence concerning how Decedent came to be on the ground below the bridge.

¶ 9 It is true that one of the elements of any cause of action for negligence upon which Holland will have the burden of proof *at trial* is causation. Under her current theory that the slack in the top cable allowed Decedent to fall from the bridge, she will be required to demonstrate *at trial* not only that he fell from the bridge to his death but that his fall would have been prevented if the cable had not been slack. In one of the cases cited by UCI in a trial court brief, *Gillham v. Lake Country Raceway*, 2001 OK 41, 24 P.3d 858, the Court affirmed a trial court decision which *granted a directed verdict at trial* because the plaintiff had not produced any

evidence concerning what caused the plaintiff's minor son to slip as he was climbing a guardrail fence around a race track, resulting in a broken leg.

¶ 10 However, this case is here on a summary adjudication order, not a directed verdict at trial. To obtain summary adjudication, a defendant who does not rely on an affirmative defense has the burden of producing evidentiary materials showing the absence of a substantial controversy as to one fact essential to plaintiff's claim *and* that the fact is in the defendant's favor. *Stephens v. Yamaha Motor Company, Limited, Japan*, 1981 OK 42, 627 P.2d 439.

¶ 11 Therefore, in order to obtain summary adjudication on "causation," UCI had the burden of producing evidentiary material which demonstrated the slack in the cable was *not* a contributing cause to Decedent's fall. Holland had no burden to produce contrary evidentiary material until UCI met this burden. UCI's evidentiary material, at best, only shows that at this stage of evidentiary development, the precise reason Decedent fell from the bridge is unknown.

¶ 12 In Oklahoma courts, a defendant may not obtain summary adjudication by essentially daring the plaintiff to "prove it." It is not enough to show the likelihood that plaintiff will be unable at trial to provide evidence to the prove the essential elements of the cause of action and a directed verdict will be required. *Northrip v. Montgomery Ward*, 1974 OK 142, 529 P.2d 489. Summary adjudication was not appropriate on UCI's argument that Holland had not demonstrated causation.

¶ 13 Under the Oklahoma rules applicable to summary adjudication proceedings, the facts shown by the evidentiary materials presented to the trial court, considered in the light most favorable to Holland, and all reasonable inferences from those facts, were not consistent only with judgment for UCI. The

2. In her response to UCI's motion, Holland objected to this evidentiary material, contending it was hearsay and, without at least a statement from the witness, did not meet the standard for summary judgment admissibility. We need not address this argument.

trial court's judgment is reversed, and the case is remanded for further proceedings.

REVERSED AND REMANDED.

MITCHELL, J., concurs in result; and BELL, J., concurs.