**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 25, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

ANTHONY TABER; MARKEETA
TABER,

    Plaintiffs - Appellants,

v.

ALLIED WASTE SYSTEMS, INC., d/b/a
Allied Waste Service of Oklahoma City,

    Defendant Third-Party
    Plaintiff - Appellee,

v.

MANSFIELD OIL COMPANY OF
GAINESVILLE, INC.,

    Third-Party Defendant.

No. 15-6113
(D.C. No. 5:13-CV-00773-D)
(W.D. Oklahoma)

ANTHONY TABER; MARKEETA
TABER,

    Plaintiffs,

v.

ALLIED WASTE SYSTEMS, INC., d/b/a
Allied Waste Service of Oklahoma City,

    Defendant Third-Party
    Plaintiff - Appellant,

v.

No. 15-6120
(D.C. No. 5:13-CV-00773-D)
(W.D. Oklahoma)

MANSFIELD OIL COMPANY OF
GAINESVILLE, INC.,

    Third-Party Defendant - Appellee.

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____


## I.    INTRODUCTION

Anthony Taber was injured when he fell from a ladder while delivering fuel to an Allied Waste Systems facility. Mr. Taber and his wife filed suit against Allied. Because Mr. Taber has no memory of how he fell, the Tabers retained two experts to opine as to the cause of his fall. Allied successfully moved to exclude the testimony of the Tabers' experts, resulting in summary judgment for Allied. The Tabers now appeal.

We conclude the district court acted within its discretion in excluding the Tabers' experts. Without that expert causation testimony, the Tabers could not establish a necessary element of their claims. We therefore affirm the district court's decision granting summary judgment in favor of Allied.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## II. BACKGROUND

### A. *Factual Background*

Mr. Taber, a fuel-truck driver, sustained serious injuries when he fell from a ladder on a fuel tank at an Allied facility. When Mr. Taber arrived at Allied's facility on the day of the accident, he learned the gauge for the fuel tank was not working. He therefore had to manually measure the fuel level in the tank—both before and after filling it—by climbing a ladder to the top of the tank and using a fuel stick to take the measurement. Mr. Taber climbed the ladder to the top of the tank, took a fuel measurement, descended the ladder, and then loaded fuel from his truck into the tank. Upon filling the tank, he climbed the ladder and again measured the fuel level. Mr. Taber's accident occurred when he "turned around and proceeded down the ladder." After "taking a couple or a few steps," Mr. Taber fell, and the next thing he remembers is "somebody hollering at [him]" as he lay on the ground. Mr. Taber was found unconscious on the pavement below the ladder. He sustained a spinal cord injury resulting in partial paralysis to his extremities.

### B. *Procedural Background*

Mr. Taber and his wife, Markeeta Taber, filed a premises-liability claim against Allied in Oklahoma state court, alleging the fuel-tank ladder was a "dangerous climbing structure that does not meet safety guidelines." Allied removed the action to federal court. Allied then filed a third-party complaint against Mansfield Oil Company, seeking indemnification pursuant to a master services agreement under which Mr. Taber delivered fuel to Allied on Mansfield's behalf.

3

The Tabers retained two expert witnesses to opine that design defects in the fuel-tank ladder caused Mr. Taber's fall. Dr. Bob Block is a professional engineer and metallurgist, who evaluated the ladder's compliance with standards promulgated by the American National Standards Institute (ANSI) and the Occupational Safety and Health Administration (OSHA) relating to rung spacing and step placement. Dr. Block opined that the ladder's geometry—specifically the twenty-two-inch intra-rung spacing and the placement of the top step below the level of the surface served by the ladder—violated OSHA requirements and that these violations were "a direct or contributing cause" of Mr. Taber's accident.

Dr. J.P. Purswell is a professional engineer specializing in human factors and ergonomics. Dr. Purswell opined that "[t]he 22 inch spacing between the rungs make it much more difficult and much less safe for a person to ascend or descend this ladder than if the ladder had been constructed in compliance with OSHA and ANSI requirements." Dr. Purswell observed that the twenty-two-inch intra-rung spacing was "very far outside the range typically considered suitable for a fixed ladder." Dr. Purswell also noted that the rungs were tilted at various angles away from the fuel tank, and opined that these angled rungs "reduced the available slip resistance . . . and increased the likelihood that a person's foot would slip off the rung and the person would fall." Mr. Purswell therefore opined that it is more likely than not that both the intra-rung spacing and the angled rungs caused or contributed to Mr. Taber's fall.

Allied filed a motion to exclude the opinions of Dr. Block and Dr. Purswell under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Allied also filed a motion for summary judgment, arguing that without the expert opinions of Dr. Block and Dr. Purswell, the Tabers had no evidence to show a defect in the ladder was the cause of Mr. Taber's injuries.

In its *Daubert* motion, Allied argued Dr. Block and Dr. Purswell lacked expertise in the relevant field of ladder design and construction, that their opinions were unsupported by the facts of the case, that the experts failed to perform any testing of their conclusions or rule out alternative causes for Mr. Taber's fall, and that the experts' opinions constituted impermissible legal conclusions. The district court granted Allied's motion, ruling Dr. Block was not qualified to give an opinion due to a lack of relevant expertise in ladder design or accident reconstruction. The district court also ruled Dr. Block's opinion was unreliable, in that it was based on unsupported speculation and did not "set forth any underlying methodology, any statistical analysis related to ladder injuries, or any other supporting data." The court specifically noted Dr. Block's failure to test his theory of causation by reconstructing the accident and his failure to rule out other potential causes identified by the defendant.

With respect to Dr. Purswell, the district court found his expertise in ergonomics and experience with OSHA regulation and ANSI standards qualified him to opine on causation. But the district court concluded Dr. Purswell's testimony was unreliable. The district court observed that, like Dr. Block, Dr. Purswell had not

5

attempted to test his theory by reconstructing the accident or "perfom[ing] any type of experimentation." Nor had Dr. Purswell accounted for other factors that may have caused or contributed to Mr. Taber's fall. The district court therefore concluded Dr. Purswell's opinion was not based on "any reliable methodology" and should be excluded.

Finally, the district court ruled that neither expert's testimony would be helpful to the jury insofar as it entailed explaining that the ladder's rung spacing failed to comply with OSHA or ANSI standards, which straightforwardly required a rung spacing of twelve inches. Because the ladder in question undisputedly had a rung spacing greater than twelve inches, the district court found that expert testimony merely opining the ladder violated relevant standards would not assist the jury.

Having excluded the Tabers' experts, the district court granted Allied's motion for summary judgment. The district court observed that Mr. Taber did not know how he fell and that the Tabers had not introduced any other evidence to prove causation. Without expert testimony as to causation, the district court concluded the Tabers could not establish the requisite elements of their negligence claim and Allied was therefore entitled to judgment as a matter of law. Mansfield also filed a motion for summary judgment on Allied's claim for indemnification, which the district court granted.

The Tabers filed a timely motion to alter or amend the judgment under Rule 59(e). In that motion, the Tabers "apologize[d] to the Court for not fully developing the facts and circumstances surrounding the causation issue in its Response to

6

Defendant's Motion for Summary Judgment." The Tabers further contended that the "failure to properly set forth the facts of the day in question has led to a manifest injustice." The Tabers then directed the district court to testimony from Mr. Taber's deposition that had not been set forth in the Tabers' opposition to summary judgment, but which they claimed provided direct evidence that the extended rung spacing caused Mr. Taber's fall. The Tabers also sought to introduce new evidence: an affidavit from Dr. Block—in substance a supplemental expert report—attempting to remedy the deficiencies observed by the district court in reviewing Dr. Block's qualifications and analysis.

The district court denied the Tabers' motion to alter or amend the judgment, reasoning the Tabers had provided no explanation why this evidence could not have been submitted as part of the summary judgment or *Daubert* briefing. The district court also stated that nothing in Dr. Block's affidavit undermined the factual or legal bases of the district court's decision to exclude his testimony. In conclusion, the district court ruled the Tabers' "failure to present their strongest case in the first instance does not entitle them to a second chance in the form of a motion to reconsider." The Tabers now appeal.[1]

---

[1] Allied also conditionally appealed the summary judgment in favor of Mansfield on Allied's indemnification claim, in the event this court reversed the district court's grant of summary judgment to Allied on the Tabers' claims. Because we affirm the district court's grant of summary judgment to Allied, "there is no basis to hear [an appeal] that is conditioned on reversal of that judgment." *Weaver v. Blake*, 454 F.3d 1087, 1101 (10th Cir. 2006). Accordingly, we dismiss Allied's conditional appeal as moot. *Id.*

## III. ANALYSIS

The Tabers raise two challenges to the district court's rulings. First, they argue the district court abused its discretion in excluding the testimony of their experts, Dr. Block and Dr. Purswell. Second, the Tabers argue Mr. Taber's deposition testimony is sufficient by itself to preclude the grant of summary judgment to Allied. Although the Tabers do not challenge the district court's decision denying relief under Rule 59(e), they rely in large part on the evidence presented to the district court in their postjudgment Rule 59(e) motion. We therefore begin our analysis by clarifying the scope of our review. We then proceed to the merits, considering first the Tabers' challenge to the exclusion of their experts and, second, their challenge to the entry of summary judgment for Allied.

"As a reviewing court, we may only 'evaluate the trial court's decision from its perspective when it had to rule and not indulge in review by hindsight.'" *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1019 (10th Cir. 2004) (quoting *Old Chief v. United States*, 519 U.S. 172, 182 n.6 (1997)). Thus, our review is generally limited "to the record that was before the district court when it made its decision." *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008). And in reviewing a summary-judgment ruling, we further limit our review to "the materials adequately brought to the attention of the district court by the parties." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

Here, the Tabers do not challenge the district court's denial of their Rule 59(e) motion. Instead, they appeal the district court's rulings excluding their expert

8

witnesses and granting summary judgment to Allied. Our review is thus limited to the evidence in the record before the district court and adequately brought to its attention at the time it rendered the challenged decisions. *Regan-Touhy*, 526 F.3d at 648; *Adler*, 144 F.3d at 671. That means we will not consider evidence introduced into the record or brought to the district court's attention for the first time in the Tabers' Rule 59 motion. *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (explaining that where the denial of a postjudgment "motion to reconsider" is not shown to be an abuse of discretion, this court "will not consider any of the new evidence presented for the first time in [the] motion to reconsider").

### A.    *Exclusion of the Tabers' Expert Witnesses*

Turning to the merits, we first consider the Tabers' challenge to the exclusion of their expert witnesses. The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and the framework set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In reviewing the exclusion of expert testimony, we review de novo whether the district court performed its *Daubert* "gatekeeping" function, but we review for an abuse of discretion the manner in which the district performed that function. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). To permit this court to adequately review the district court's conclusions, the district court must make sufficiently specific factual findings with respect to the reliability and relevancy of the expert testimony. *Id.* But so long as the district court performs its obligations under Rule 702 and *Daubert*, we will not disturb its decision to exclude expert testimony absent a conclusion that the decision

9

is "arbitrary, capricious, whimsical, manifestly unreasonable, or clearly erroneous."
*Id.*

Here, the Tabers do not argue the district court failed to perform its gatekeeping role or to support its conclusions with adequate findings. Accordingly, our review is confined to whether the district court abused its "wide latitude" of discretion in excluding the Tabers' experts. *Id.* In performing a *Daubert* analysis, "the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting Fed. R. Evid. 702). If the expert is sufficiently qualified, the district court must then consider whether the expert's opinion is both relevant and reliable. *Daubert*, 509 U.S. at 589.

## 1. Dr. Block

The district court excluded Dr. Block's testimony, concluding that he was unqualified to opine on the cause of Mr. Taber's fall, that his opinion was unreliable, and that his testimony would not be relevant to the jury. Because we conclude the district court did not exceed its discretion by finding Dr. Block unqualified, we affirm the district court's ruling on that basis and do not reach the other grounds for its decision.

"District courts have broad discretion in determining the competency of expert witnesses." *United States v. Nichols*, 169 F.3d 1255, 1265 (10th. Cir. 1999).To qualify as an expert, a proposed witness must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on

10

substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (quoting *Graham v. Wyeth Labs*, 906 F.2d 1399, 1408 (10th Cir. 1990)). An expert who "possesses knowledge as to a general field" but "lacks specific knowledge does not necessarily assist the jury." *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998). Proposed expert testimony must therefore "fall within the reasonable confines of [the witness's] expertise." *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (internal quotation marks omitted). The proponent of expert testimony bears the burden of demonstrating the expert's qualification. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001).

On appeal, the Tabers do not expressly challenge the district court's ruling on Dr. Block's qualifications. While their statement of the case sets forth facts regarding Dr. Block's qualifications, the Tabers do not explain how these facts demonstrate the district court abused its discretion in finding Dr. Block unqualified. But even if we conclude the Tabers adequately raised this issue on appeal, they nevertheless have failed to demonstrate the district court abused its discretion.

In ruling that Dr. Block was not qualified to testify as an expert regarding the cause of Mr. Taber's fall, the district court made a number of findings. The district court observed that while Dr. Block had conducted an estimated one thousand "investigations and evaluations of injury-producing accidents," Dr. Block could recall working on only one case involving a fixed ladder "some years ago" and could not recall the details of the accident. The district court also noted that Dr. Block

11

"does not have any experience in ladder design or manufacture, has never served on ANSI committees regarding standards applicable to ladders and has never published any articles about ladder design." And the district court found the record contained "no evidence of [Dr.] Block's experience in the field of accident reconstruction." These findings were based on Dr. Block's experience as related in his expert report and deposition testimony, which is all that had then been presented to the district court. Based on those findings, the district court concluded Dr. Block lacked specific knowledge and expertise in the area of ladder design and ladder-accident investigation.

The Tabers do not challenge the district court's focus on fixed-ladder accidents as the relevant area of expertise. And our review indicates that district courts routinely consider experts' specific experience with ladder design and accident investigation when evaluating their qualifications in ladder-accident cases. *See, e.g.*, *Rupolo v. Oshkosh Truck Corp.*, 749 F. Supp. 2d 31, 39 (E.D.N.Y. 2010) (finding expert qualified to testify to causation in ladder-accident case where expert was voting member of ANSI Ladder Safety Committee, had published three peer-reviewed technical papers on ladder safety, and had investigated over 100 accidents involving falls from ladders); *Delehanty v. KLI, Inc.*, 663 F. Supp. 2d 127, 132 (E.D.N.Y. 2009) (finding expert unqualified to testify to causation in ladder-accident case where expert had "no expertise in either ladder design or ladder accident reconstruction," had never designed or tested a ladder, and had never conducted studies or authored articles "specific to ladder design or accidents"); *Sittig v.*

12

*Louisville Ladder Grp. LLC*, 136 F. Supp. 2d 610, 616 (W.D. La. 2001) (finding two experts unqualified to testify regarding ladder defects because neither expert was qualified in the "relevant field" of ladder design).

Instead, the Tabers attempt to bolster Dr. Block's qualifications with an affidavit from Dr. Block submitted with the Tabers' Rule 59(e) motion. There, the Tabers set forth for the first time that Dr. Block had investigated accidents involving fixed ladders on at least two previous occasions, that he had investigated two dozen or more accidents involving portable metal ladders, and that he had worked as a consultant for several months for a ladder manufacturer. But this evidence was not before the district court when it ruled on the motion to exclude Dr. Block and, for the reasons stated above, the evidence is outside the scope of our review. *See Regan-Touhy*, 526 F.3d at 648. Thus, the Tabers have failed to demonstrate the district court abused its discretion in concluding Dr. Block was unqualified to testify as to the cause of Mr. Taber's fall, and we affirm the exclusion of Dr. Block's testimony on that basis.

## 2. Dr. Purswell

Although the district court concluded Dr. Purswell was qualified to testify on the issue of causation, it determined Dr. Purswell's testimony was unreliable. Rule 702 permits the admission of expert testimony that is "based on sufficient facts or data" and is "the product of reliable principles and methods" that have been "reliably applied" to the facts of the case. Fed. R. Evid. 702. To determine if this reliability standard has been satisfied, the district court must consider "whether the reasoning or

13

methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592–93. This inquiry requires the district court to focus on the methodology employed by the expert rather than the precise conclusions reached. *Id.* at 595. But where "the conclusion simply does not follow from the data, a district court is free to determine that an impermissible analytical gap exists between premises and conclusion." *Bitler*, 400 F.3d at 1233. "Because the district court has discretion to consider a variety of factors [in] assessing reliability under *Daubert*, and because, in light of that discretion, there is not an extensive body of appellate case law defining the criteria for assessing scientific reliability, we are limited to determining whether the district court's application of the *Daubert* [standard] manifests a clear error of judgment or exceeds the bounds of permissible choice in the circumstances." *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1206 (10th Cir. 2002).

Dr. Purswell's theory of Mr. Taber's fall is based on his expertise in ergonomics and biomechanics. Dr. Purswell is an engineer and ergonomics professional and has written and presented on topics including OSHA compliance and ergonomics hazards. In preparing his opinion, Dr. Purswell also reviewed the literature related to the biomechanics of ascending and descending a ladder. Dr. Purswell provided the biomechanical analysis underlying his opinion at his deposition. According to Dr. Purswell, the ladder's large intra-rung spacing would make it difficult to maintain three-point contact with the ladder—either two hands and one foot or two feet and one hand—while descending, and the angled rungs exacerbated the risk of falling "because you're leaning backward, away from the

14

ladder as you're trying to get your foot in a position where you get down to the next step and still have your body and your torso on the step that you're in contact with." Dr. Purswell explained that this configuration "puts your center of gravity far away from your base of support. And combined with the angled rungs, that makes it more likely that foot or hands will slip."

Applying these principles here, Dr. Purswell concluded that, because Mr. Taber was "a shorter fellow," when descending the ladder "he had to hang on to his hands and had to pull up his one knee into his chest and try to reach his leg . . . from the next lower rung. And as he was doing that, the combined angle of tilt on the rung he was on, combined with the way he had to have his center of gravity so far over his base of support or it'd reach down to the next level, caused him to fall." Based on this analysis, Dr. Purswell opined "it is more likely than not" that both the large intra-rung spacing and the angled rungs of the ladder caused or contributed to Mr. Taber's fall.

The district court concluded Dr. Purswell's testimony was unreliable because Dr. Purswell had not tested his theory by reconstructing the accident and had not adequately considered and excluded other causes. The Tabers argue the district court abused its discretion in reaching this conclusion because Dr. Purswell was not required to test his theory and he adequately considered other alternative explanations.

15

a. *Failure to Test*

The Tabers argue, based on our decision in *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th. Cir 2004), that "testing is not required in all expert opinion testimonies" and that "[Dr.] Purswell's testimony relies upon accepted standards and practices," which need not be tested. But the Tabers failed to raise this argument to the district court in opposing Allied's motion to exclude Dr. Purswell. Although Allied argued below that "where an expert fails to test his conclusions, his opinions are not reliable and should be excluded," the Tabers failed to respond to this argument in their opposition to Allied's motion. Again, the Tabers first raised this argument when they sought reconsideration of the district court's ruling under Rule 59. "We have held that a party's attempt to raise a new argument in a motion for reconsideration is not sufficient to preserve it for appeal." *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 810 F.3d 1161, 1173 (10th Cir. 2016) (internal quotation marks omitted). Because the Tabers failed to raise this argument to the district court until their motion for reconsideration, it is unpreserved for our review on appeal.

But even if we consider the Tabers' argument on its merits, they have not demonstrated the district court abused its discretion in concluding Dr. Purswell's failure to test his theory negatively impacted its reliability. To establish an expert's testimony as reliable, the proponent is not required to show the expert's methodology is generally accepted or indisputably correct; he need show only that it is scientifically sound. *Bitler*, 400 F.3d at 1233. The Supreme Court has identified

16

factors that may bear on the district court's evaluation of the reliability of an expert's methodology: "(1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has 'general acceptance.'" *Id.* And this court has recognized that these factors are "most relevant in the context of a new and novel scientific theory." *Id.* Where the reliability of the underlying science is not in dispute, "the need for testing is not at its highest." *Id.* at 1236.

In *Bitler*, the plaintiffs' experts opined that a propane explosion in a home was caused by copper-sulfide contamination of the safety valve seat of a water heater. *Id.* at 1231. The defendants sought to exclude the plaintiffs' experts for, among other reasons, failure to test their theory that copper sulfide had passed through a mesh screen to lodge on the safety valve seat. *Id.* at 1235. The district court declined to exclude the plaintiffs' experts, and this court affirmed. We observed that the experts' theory of the accident was based on the "known science of copper sulfide particulate contamination as a cause of propane gas leaks" and that testing of this established scientific principle would normally be unnecessary. *Id.* at 1236. We reasoned that while the presence of a mesh screen designed to filter out those particles changed the causal analysis, it did not "fundamentally and necessarily change[] the nature of the underlying science." *Id.* Thus, because the "core science—that copper sulfide particles are the kind of thing that when lodged on the valve seat can cause leaks—[was] sufficiently well-established," we concluded that testing was not required to

17

permit the plaintiffs' experts to opine that the particles actually found were of sufficient size to cause a leak. *Id.*

Here, the Tabers have not identified a known and undisputed scientific principle or theory that demonstrates testing was unnecessary to establish the reliability of Dr. Purswell's opinion. The Tabers' briefing states only that Dr. Purswell's testimony is based on "accepted standards and practices," his "expertise and training," and the "biomechanics of a person." But these generalities do not even approach the specific scientific principles underlying the district court's decision in *Bitler*. Indeed, the Tabers have directed us to no "known science" relating to the cause of falls from ladders whose dimensions or geometry exceed OSHA and ANSI specifications. To the contrary, Dr. Purswell conceded he was unaware of any published articles or literature regarding irregularly constructed ladders or studies analyzing the rate of fall from ladders that failed to comply with OSHA or ANSI standards. Absent a demonstration that Dr. Purswell's theory was based on an undisputed scientific principle, we cannot conclude the district court abused its discretion by finding the reliability of the theory should have been established through testing.

b. *Failure to Exclude Alternative Explanations*

The Tabers also challenge the district court's conclusion that Dr. Purswell failed to exclude alternative causes of Mr. Taber's fall. In evaluating an expert's testimony, district courts may consider whether the expert has "adequately accounted for obvious alternative explanations." Fed. R. Evid. 702 committee note to 2000

18

amendment. But an expert need not exclude every possible cause of an injury to testify as to causation. *Bitler*, 400 F.3d at 1238 n.6. Instead, the expert need only exclude those alternative explanations that are "obvious"—i.e., where there is "an established connection between certain possible causes and [the injury]." *Id.* If there is no evidence showing a possible alternative is valid, the expert's failure to rule it out does not render his diagnosis unreliable. *Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 999 (10th Cir. 2003). So long as the most obvious causes have been considered and ruled out, the existence of possible "uneliminated" causes goes to "the accuracy of the conclusion, not the soundness of the methodology," and therefore goes to the weight rather than admissibility of the evidence. *Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C. Cir. 1996).

In *Bitler*, we referred to this process of eliminating causes to arrive at the most likely as "reasoning to the best inference," and we analogized the process to the medical practice of "differential diagnosis." 400 F.3d at 1237. In taking this approach, the expert must first identify "some independent evidence that the cause identified is of the type that could have been the cause." *Id.* The expert must then "eliminate other possible sources as highly improbable, and must demonstrate that the cause identified is highly probable." *Id.* at 1238. Applying those principles to the facts of *Bitler*, we stated, "[I]t is uncontroverted that if copper sulfide particles of sufficient size became lodged on the safety valve seat, then a gas leak substantial enough to cause the explosion . . . could occur." *Id.* And we observed that the experts had "testified to how they eliminated the gas leaks in the bedroom and the T-

19

connector above the water heater as likely sources of the accident; the one was not located close enough to the source of the explosion, and the other was itself most likely the result of trauma caused by the explosion." *Id.* at 1237. With the experts' cause independently identified and the alternative causes eliminated as highly improbable, we concluded the experts had engaged in reasoning that identified the copper-sulfide contamination of the safety valve as the best inference of causation, thereby providing sufficient reliability for the admission of their opinions. *Id.* at 1238.

Here, Allied moved to exclude Dr. Purswell's opinion, in part, because he failed to address alternative causes of the fall: Mr. Taber's "history of seizures, the worn condition of his boots, the possibility that he had contaminants on his gloves or boots that caused him to slip, or that he just lost his balance." In opposing this argument, the Tabers did not argue that Dr. Purswell had conducted an appropriate "differential diagnosis" or "reasoning to the best inference." Rather, the Tabers' position below was that Dr. Purswell had "considered other sources" for the fall and that he "would have criticisms for improper footwear" and "agreed that if a seizure occurred then that could have caused the fall." Because "[t]hese are not flat out refusals to consider alternative possibilities," the Tabers contended Dr. Purswell's determination that the ladder caused Mr. Taber's fall was reliable. Thus, in the district court, the Tabers argued that it was sufficient for Dr. Purswell to have acknowledged the possibility of other causes, even if he was unable to eliminate those causes as highly improbable.

20

Yet mere acknowledgment of other possible causes cannot establish the reliability of Dr. Purswell's causation theory. Rather, "reasoning to the best inference" means that the expert "must eliminate other possible sources as highly improbable, and must demonstrate that the cause identified [by the expert] is highly probable." *Bitler*, 400 F.3d at 1238. In his deposition, Dr. Purswell was asked, "Did anything else cause or contribute to Mr. Taber's fall?" Dr. Purswell testified that he "wasn't asked to look at that" and "ha[d] not done that." Dr. Purswell agreed that Mr. Taber's fall could have been caused by "bad boots," "stuff on his gloves," "a seizure," or that "he just fell." And while Dr. Purswell testified that he did not think any of those causes were "the most likely reason" for Mr. Taber's fall, his stated basis for that opinion was "the very much out-of-standard geometry of the ladder." While this explanation may show that Dr. Purswell considered the non-compliant geometry of the ladder to be a "highly probable" cause of Mr. Taber's accident, it does not demonstrate that Dr. Purswell ruled out other possible causes as "highly improbable." *Id.* Indeed, Dr. Purswell conceded he could not offer an opinion as to other potential causes of the fall without resorting to speculation.

The Tabers now contend Dr. Purswell did rule out "other possibilities, such as [Mr. Taber's] boots and/or alleged seizure condition." They direct us to evidence that a different expert had opined Mr. Taber did not suffer from a seizure disorder and that Dr. Purswell examined Mr. Taber's boots and concluded the worn areas would not have been in contact with the ladder. But the Tabers did not argue these points or direct the district court to this evidence in opposing Allied's *Daubert* motion. And

21

there is no indication that Dr. Purswell incorporated this information into his opinion. Accordingly, Dr. Purswell could only speculate that the design of the ladder caused Mr. Taber's fall, and his opinion was therefore not reliable.

Because the district court did not abuse its discretion in determining Dr. Purswell's testimony was unreliable based on his failure to test his theory or to eliminate other possible causes, we affirm the district court's exclusion of Dr. Purswell's testimony.

### B. Grant of Summary Judgment

Having affirmed the district court's exclusion of the Tabers' expert witnesses, we now consider whether the Tabers' claims can withstand summary judgment absent expert testimony on the issue of causation. "We review the grant of summary judgment de novo applying the same standard as the district court embodied in Rule 56(c)." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "In applying this standard, we view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Id.* Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets its burden of demonstrating the absence of a genuine issue of material fact, it is entitled to summary judgment if

22

"the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

A federal court sitting in diversity applies the substantive law of the forum state, in this case, Oklahoma.[2] *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850 (10th Cir. 2015). Under Oklahoma law, a premises-liability claim is a species of negligence, generally arising from the allegation that the landowner failed to "keep the premises in a reasonably safe condition" for invitees. *Scott v. Archon Grp., L.P.*, 191 P.3d 1207, 1212 (Okla. 2008). Thus, the Tabers must demonstrate Allied owed Mr. Taber a duty to keep its premises reasonably safe, Allied breached that duty, Mr. Taber suffered injury, and Mr. Taber's injury was proximately caused by breach of

---

[2] In contrast, a federal court applies its own procedural rules even when sitting in diversity. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 417 (2010). Whether summary judgment should have been granted in this federal diversity case is therefore governed by the standard found in the Federal Rules of Civil Procedure as applied to Oklahoma's substantive law. *C.F. Braun & Co. v. Okla. Gas & Elec. Co.*, 603 F.2d 132, 133 n.1 (10th Cir. 1979) ("The propriety of summary judgment in federal diversity cases must be evaluated in light of the Federal Rules of Civil Procedure rather than state procedural law, but with reference to the state's substantive law."). As a result, the Tabers' reliance on *Holland v. Urban Contractors, Inc.*, 131 P.3d 139 (Okla. Civ. App. 2005), is misplaced. In *Holland*, the Oklahoma Court of Civil Appeals denied a motion for summary judgment despite the plaintiff's failure to establish causation because, under Oklahoma's rules of civil procedure, "[i]t is not enough to show the likelihood that plaintiff will be unable at trial to provide evidence to [] prove the essential elements of the cause of action." *Id.* at 141. But the summary-judgment standard under the federal rules governs here and requires more. As the Supreme Court instructed in *Celotex*, the nonmoving party's failure to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" is fatal to her claim. 477 U.S. at 323. The district court correctly applied the federal summary-judgment rules to conclude the Tabers' failure to come forward with causation evidence entitled Allied to summary judgment.

23

that duty. *Beugler v. Burlington N. & Santa Fe Ry. Co.*, 490 F.3d 1224, 1227 (10th Cir. 2007). In moving for summary judgment, Allied argued the Tabers could not demonstrate the essential element of causation once their experts were excluded.[3] The district court agreed, reasoning "it is undisputed that Mr. Taber does not know why he fell and there are no witnesses to the accident." Because the Tabers lacked any direct evidence of causation, the district court concluded they could establish causation only through expert testimony. Accordingly, the district court granted summary judgment in favor of Allied.

The Tabers argue the district court erred because Mr. Taber's own testimony provided direct evidence of the cause of his fall. Pointing to his deposition, they contend Mr. Taber explained that, as he was stepping down to reach the first excessively spaced rung, he experienced a sensation of falling and attempted to hang onto the ladder with one hand. But the Tabers failed to set forth this testimony in their opposition to Allied's motion for summary judgment. In its motion for summary judgment, Allied asserted, "Taber was found unconscious lying on the ground beneath the ladder, and had no memory of how he fell," and "Taber further testified that exactly what caused him to fall is a mystery." The Tabers failed to challenge either of these contentions in opposition to summary judgment. Instead, they first brought Mr. Taber's deposition testimony to the district court's attention and first

---

[3] Allied Waste also moved for summary judgment on the basis that the Tabers' claims were barred by Oklahoma's construction statute of repose. The district court did not reach that issue and our disposition of the appeal on other grounds renders consideration of the issue unnecessary.

disputed Allied's factual assertions in their Rule 59(e) motion. As discussed above, we review the district court's grant of summary judgment "from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties." *Adler*, 144 F.3d at 671. We accordingly do not consider the evidence the Tabers presented to the district court after the court had granted summary judgment in favor of Allied. Based on what was before it, the district court did not err in concluding the Tabers had "failed to make a sufficient showing on an essential element of [their] case." *Celotex*, 477 U.S. at 323. The district court therefore properly granted summary judgment in favor of Allied.

## IV.  CONCLUSION

The Tabers failed to provide the district court with sufficient indicia of Dr. Block's qualifications and the reliability of Dr. Purswell's opinion, and the district court properly excluded their testimony. In the absence of that expert testimony, the Tabers had no evidence to prove the condition of the ladder proximately caused Mr. Taber's fall. The district court therefore correctly concluded the Tabers could not establish a required element of their claim and Allied was entitled to judgment as a matter of law. We accordingly AFFIRM the district court's summary judgment decision.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

25